## Walter Goodenow v. Thomas Curtis.

*Contract: Fraud: Description: Possession.* Complainant entered into an agreement with defendant to purchase of him the 'Knapp House property," so called.

The defendant at the time was the owner of a certain triangular piece of land which he purchased of one Knapp, together with several other lots, all of which had been used and occupied as one piece, and been enclosed by a fence for several years before, and which enclosed piece had long been known as the "Knapp House property."

During the negotiation, defendant alluded to the entire piece as the said "Knapp House property," and he knew that complainant supposed and understood that he was purchasing the entire piece so enclosed. In one of the conveyances to complainant, the description, as dictated by defendant, specified two of the lots in said piece, as constituting the whole of the piece known as the Knapp property, and which defendant knew was untrue.

It further appeared that the entire piece enclosed was occupied by one Reede as tenant, and a mutual arrangement was entered into by all the parties that complainant was to have possession of the entire piece. The conveyance delivered to complainant omitted the said triangular piece.

GOODENOW *v.* CURTIS.

*Held*, that according to the understanding of the parties, and, in fact, the agreement was for the purchase of the "Knapp House property." That complainant believed the deeds he received embraced it, and which the defendant knew they did not, and knew also that complainant was acting upon the faith that they did so, and was thereby deceived.

*Held further*, That complainant took possession under his purchase of the whole "Knapp House property," and so went into possession of the disputed parcel as a portion of such property.

*Description of premises in bill of complaint.* Where the description of property in the bill of complaint was such as to point out the premises by a name which was well known, and which distinguished it from others, held sufficient.

*Amendment: Chancery Rule 21.* Chancery Rule number twenty-one has no application to amendments at the hearing of a cause.

*Heard April 17, 20, 21. Decided April 27.*

Appeal in Chancery from Calhoun Circuit.

The bill was filed to compel the defendant to convey to complainant certain fractional lots in the village of Albion, included in an agreement of purchase, but omitted by the defendant in his conveyances; such omission being at the time unknown to the complainant, he supposing they were embraced in the conveyances.

The premises were described in the bill as the "Knapp House property," and known as such.

The defendant, in his answer, denies that said fractional lots were included in said agreement.

A decree was granted as prayed for in the bill.

The facts are stated in the opinion.

*T. G. Pray*, for complainant.

1. The testimony clearly shows that all the fractional lots were included in the agreement of purchase of the hotel property known as the "Knapp House property," of which they were a portion, and were mainly enclosed as such.

Where the agreement is positively denied by the answer, and is proved only by the unsupported evidence of one witness, that will not be allowed to prevail, but where the one witness is corroborated in his statement by circumstances, the proof may prevail over the denial.

— *Fry on Spec. Per. p. 268,* § *422; East India Co. v. Donald, 9 Ves. 276; Morphett v. Jones, 1 Sw. 172; Toole v. Medlicott, 1 Ball and B. 393.*

2. A court of equity will enforce the specific performance of a parol contract for the conveyance of land, where the purchase money, or a part thereof, has been paid, possession taken under the contract, and valuable improvements made.—*Burtch v. Hogge, Har. Ch. 31; Bomier v. Caldwell, Id. 65; Bomier v. Caldwell. 8 Mich. 463; Norris v. Showerman 2 Doug. 16.*

3. The testimony clearly shows that defendant knew complainant treated for the entire Knapp House property He must, therefore, be considered as having fraudulently withheld a conveyance of the parcel in question.

A vender who fraudulently induces the vendee to believe that he is purchasing a parcel of land of a certain extent, while the conveyance is so drawn as not to include the whole, will be decreed to convey the residue, — *Wiswell v. Hall, 3 Paige, 313.*

*Chas. Draper* and *Thos. Curtis,* for defendant in error.

1. The bill is for specific performance of a verbal agreement to sell and convey land. The answer denies a sale or agreement to sell and convey. And on this state of the case, it has been held that the complainant must fail, on the ground of the statute of frauds, which requires the contract to be written. To this point we cite — *Story Eq. Plead.* § *762, note 1, and cases cited; Cozine v. Graham, 2 Paige, 177, 181; Ontario Bank v. Root & Cogdon, Id. 473; 11 Id. 498; Haines v. Knickerbocker, 5 Wend. 638.*

The agreement being denied by answer, complainant must show a written contract of sale, unless allegations of fraud are made, or payment and possession under it with improvements made, etc.

2. The complainant, however, in order to take the case without the statute, averred in his bill that fraud was practiced on him by the defendant, Curtis, at the time the deeds were delivered; also that he took possession of the lots he claims, and the defendant gave him that possession, and that he was cheated and deceived by Curtis, in consequence of the confidence he reposed in his (Curtis') statements, as· to what the deeds contained.

The complainant, to sustain his bill as to the frauds, must as clearly prove it. In this case we claim he has entirely failed.

The contradictory and confused statements of the complainant, as to the contract, and more especially as to the fraud alleged, by which. he would avoid the statute of frauds, would seem to render it impossible to make any decree in the case. — *Fry on Spec. Per.* §§ *164–5–6–9, note 9; Id.* §§ *172, 203, 210, 211; Adams' Eq. 221.*

As to possession. — *1 Story Eq. Jur. 173,* § *157.*

Relief not granted when the evidence is loose, equivocal or contradictory, or when it is in its texture open to doubt, or apparent presumption. — *1 Story Eq. Jur.* § *158–9; Fry Spec. Per.* § *418; Jones v. Tyler, 6 Mich. 368.*

The evidence must be entirely satisfactory. — *1 Story Eq. J.* §§ *156, 180; Adams Eq. Jur. p. 351.*

"Sometimes, by mistake, the written ·instrument contains less than the parties intended; sometimes it contains more. In all such cases, if the mistake is clearly made out by proofs entirely satisfactory, equity will reform the contract. — *1 Story Eq. Jur.* § *152.*

This being a case not of mistake, but actual fraud, as claimed in the bill, the fraud must be clearly made out, by proofs entirely satisfactory, &c., and this rule applies to an omission as well as a mistake.

There must be a false statement in a matter in which

one party places a known reliance on the other, and confidence in him.— *1 Story Eq. J.* §§ *197, 200.*

The party must be misled by the false representation — *Id.* § *202.*

If the purchaser, choosing to judge for himself, does not avail himself of the means of knowledge open to him, or his agents, he cannot be heard to say that he was deceived by the vendor's misrepresentations.— *1 Story Eq. Jur.* § *200; Fry on Spec. Perf. 277, 283.*

3. As to the question of possession of the disputed property, it only becomes material in case the alleged contract is proved, and the fraud and misrepresentations of the defendant are clearly made out.

Complainant did not obtain it from the defendant Curtis. The delivery of the deeds, at most, only gave him possession of the land described in them — nothing more. As to the point, we cite — *Adam's Eq. 220, and notes.*

GRAVES, J.

The complainant filed his bill in the court below, to compel the defendant to convey to him certain premises in the village of Albion, and which he asserted to be a part of what was known as the "Knapp House property."

The Circuit Court decreed a conveyance as prayed by the bill, and the defendant appealed to this court. The testimony returned is very voluminous, and we deem it unnecessary to notice it in detail.

It appears that when the village of Albion was first platted, a parcel of land between Ionia and Superior streets, and running from the Kalamazoo River to an alley one rod in width along the south side of block thirty-three, was reserved by the proprietors, and set apart from sale for mill purposes; that afterwards, the northerly part, next to block thirty-three, was devoted to other uses,

while the Michigan Central Railroad was so laid as to cut off a corner of lot two in block thirty-three, and a large portion of the parcel which had been so reserved. This left the triangular piece marked seven, eight, and nine, as on the second plat given in the record.

It also appears that from about 1858, when Gilbert Knapp purchased the triangular piece of one Chatfield, to the time of the bargain between complainant and defendant, in September, 1865, the lots one, two, three, and four on block thirty-three, and the parcel in question were held and occupied together as one possession and establishment; that the lots three and four, and the piece in dispute, together with the alley between, were fenced as one enclosure, and used and enjoyed with the lots one and two; and that the territorial form and extent of the "Knapp House property," was marked and indicated as here stated by undivided ownership, by fence, and visible occupation and use at the time complainant bargained for it with the defendant. In addition to this, it is very clearly proved that for several years next preceding the time of complainant's negotiation and purchase, these premises as thus held, occupied and used, had been well known as the "Knapp House property;" that they were so known when the defendant purchased the premises of Knapp, when he leased to Reed, and when he bargained with complainant.

Under these circumstances, the complainant, who was a stranger in the place, proceeded to bargain with the defendant for the premises as the "Knapp House property," and the defendant not only spoke of the premises under that name in conversation with the complainant, uniformly if not universally, but, in person and by Reed whom he made his agent therefor, carefully pointed out as belonging to the premises they were in treaty about, and then denominated the "Knapp House property," the identical triangular piece in question.

The complainant bargained for what was known as the "Knapp House property," and for the whole of it, and, in doing so, naturally and reasonably contemplated the facts which applied the name to the subject matter; and the evidence is strong to show that up to the delivery of the deeds, the complainant believed that in purchasing he was buying the property bearing that name, as it had been held and occupied for several years, and had been shown to him by defendant and Reed; and the proofs also show that the defendant knew the complainant was acting under such impression and belief when the deeds were so drawn by the defendant's direction as to omit altogether that part of the property mentioned as the triangular piece. In this it seems to us the defendant was active in passing upon complainant as conveyances of all the land embraced by the bargain, two instruments of conveyance which he knew omitted a portion; and this opinion is much supported by the circumstance that the description in one of the deeds, as dictated by defendant, specified lots one and two, as the "Knapp House property." This description furnished by the defendant imported that lots one and two constituted what was known as the property, and the whole of the property, bearing the name last mentioned. It was a representation by the defendant to complainant in the deed itself, which the defendant, according to the evidence before us, must have known to be untrue.

Another fact drawn from the record has some bearing upon this branch of the case. At the time of the bargain with complainant, Reed was occupying the whole premises under a lease from defendant, and though it was understood that complainant wanted possession of all he should purchase, no one supposed that he wanted possession of more. The parties, however, proceeded to make an arrangement with Reed to give up possession of the whole, and he agreed to do so. And, on this negotiation, neither party suggested that the necessity for giving up the triangular piece to

complainant was less or otherwise than that for giving up the other lots. On the contrary, the necessity for securing the possession of that portion as a means of completing the bargain between the parties, was, by this conduct, as strongly evinced as the necessity for the possession of the other lots.

We are, therefore, satisfied that the defendant agreed to sell, and the complainant to buy, the " Knapp House property;" that such property in fact, and according to the understanding of the parties, included the portion in question; that the complainant believed the deeds he received embraced it, while the defendant knew that they did not, and knew also that the complainant was acting upon the faith that they did so, and was therein deceived. We are also satisfied that the complainant took possession under his purchase of the whole " Knapp House property," and and so went into possession of the disputed parcel as a portion of such property.

We observed on the argument that the defendant much relied on what he deemed uncertainty, and contradiction in the description of the property, and on inspection of the record, we find abundant evidence that this idea gave a coloring to the defendant's answer and testimony. But the view of the defendant on this point cannot be supported.

The description as contained in the bill, before the amendment, was reasonably certain.

It pointed out the property by a name which seems to have been well known, and which distinguished the premises from other property.

It was also claimed that the amendment of the bill at the hearing was forbidden by rule twenty-one of the Circuit Court in Chancery, and if not, that the amendment was too fundamental to be reconciled with the course of the court.

Neither of these positions can be maintained. The rule referred to has no application to amendments at the hearing, and the change in the bill in no manner affected

the issue, or altered the rights of the parties. While it was not needed to supply any real deficiency in the bill, it could have no other effect than to furnish a second, and somewhat more elaborate, description of the same property.

We think the decree below should be affirmed, with costs.*

The other Justices concurred.

---

*Fry on Specific Performance, 2 Am. Ed. 156, 157, top paging; Hurley v. Brown, 98 Mass. 545, and cases cited.