L. O. ROBLEE ET AL. V. UNION STOCK YARDS NATIONAL BANK.

FILED MAY 20, 1903.    No. 12,802.

1. **Negotiable Instrument.** In order to be negotiable, an instrument must bear on its face entire certainty as to the amount to be paid at maturity; conditions rendering the amount then payable uncertain destroy negotiability.

2. **Promissory Note:** NEGOTIABILITY. Incorporation of a collateral agreement in a promissory note, which requires payment to be made of uncertain sums at uncertain times before maturity, and thus renders it impossible to say how much, if anything, will be due at maturity, renders the note non-negotiable.

3. ———: COLLATERAL SECURITY. A note otherwise negotiable is not rendered non-negotiable merely by a provision for or reference to collateral security.

4. ———: ———: NEGOTIABILITY. But, when executed together and as part of one transaction, a note and mortgage securing it are to be construed together and as one instrument. Hence, provisions as to the terms and manner of payment contained in the mortgage may be such as to make the note non-negotiable as to all persons chargeable with notice thereof.

5. ———: NOTICE. Although the note does not refer to the mortgage, indorsees who take with notice of its provisions are bound thereby.

ERROR to the district court for Lancaster county: AL-BERT J. CORNISH, DISTRICT JUDGE. *Reversed.*

*Adolphus R. Talbot, Thomas S. Allen* and *Julius S. Ditt-mar,* for plaintiffs in error.

*Frank M. Hall* and *C. C. Marlay, contra.*

POUND, C.

The bank brings this action to recover upon a promissory note executed by Roblee to the Beatrice Creamery Company, his co-defendant, indorsed by said company to a bank at Broken Bow, and sold and indorsed to the plaintiff by the latter. At the time the note was executed and delivered, and as a part of the same transaction, Roblee executed and delivered a mortgage to the company, securing said note, which contained, among other things, this provision:

"Said L. O. Roblee agrees to deliver all the milk from said cows to the separator station run by the said Beatrice Creamery Co., located in Broken Bow, and said Creamery Company agrees to credit said Roblee with proceeds of sale of butter-fat from said milk, said Roblee agreeing to regularly milk and deliver same, and properly feed said cows to hold up the flow of milk."

It appears that the creamery company from time to time remitted considerable sums to the bank at Broken Bow, at which the note was payable, to be credited upon the note under this provision. But said bank, having sold the note to plaintiff, failed to transmit the money so sent, and afterwards became insolvent. These facts being pleaded, the plaintiff claimed that it was a *bona fide* holder for value, in the usual course of business, and that the payments made to the bank at Broken Bow should not be credited for the reason that said bank did not have posses-

sion of the note at the time, nor any title thereto, and had no authority to make the collections. The trial court held that the note was negotiable, and found for the plaintiff.

It will be seen that the case must turn upon the question whether the note was negotiable in view of the provision in the mortgage. The plaintiff contends that the provision quoted does not amount to an agreement that the maker might pay the note in the proceeds of butter-fat, and that, even if it does, the agreement to that effect is not incorporated in the note and the plaintiff is not bound nor the negotiability of the note affected thereby. We do not think either position well taken. Upon the first point, counsel say:

"The provisions of the mortgage did not give Roblee the right to pay the note in butter-fat, but simply made the creamery company the agent of Roblee, the creamery company agreeing to credit him with the proceeds of the sale of butter-fat."

But the agreement is that Roblee will feed the cows so as to "hold up the flow of milk," will regularly milk them, and will deliver all the milk to the company. So far from the contract not giving him the right to pay in that manner, it compels him to pay in the proceeds of butter-fat so far as sufficient might be produced before maturity of the note. It can hardly be said that the creditor was agent of the debtor to pay himself out of the debtor's property delivered to him under the agreement. The arrangement was for the benefit of the company, to enable it to apply the proceeds of the fat yielded by the milk of the mortgaged cows, upon which otherwise it had no claim, and it was acting as its own agent in so doing.

We think the provision quoted, if to be taken as part of the note, necessarily destroys its negotiability. The substance of the agreement is that from time to time prior to maturity Roblee shall deliver milk to the company and that the latter shall credit the proceeds of the butter-fat derived therefrom upon the note. Roblee is bound to deliver the milk, and to feed and care for his cows in such a

way as to make proper provision therefor. In other words, he is bound to make payments of uncertain sums at unspecified and uncertain times prior to maturity. There is no way of telling either from the papers themselves, or in any other way with more than a vague approximation to accuracy, how much would be payable on the instrument at maturity. The cows might yield enough milk so that the whole sum would be wiped out in the year which the note was to run. Or, by death of the cows, failure to yield the expected quantities, or deterioration in the quality, little or nothing might be realized to be credited. As the event proved, there were eleven several payments, aggregating a little less than one-third of the principal. In order to be negotiable, an instrument must bear on its face entire certainty as to the amount to be paid at maturity, without regard to extrinsic evidence. As Parsons puts it:

"There should be entire certainty and precision as to the amount to be paid. The reason of this is especially obvious; for if the note is to represent money effectually, there must be no chance of mistake as to the amount of money of which it thus takes the place and performs the office. On this point, therefore, the cases are quite stringent." 2 Parsons, Notes & Bills, 37.

In consequence, the incorporation of a collateral agreement in a promissory note, which requires or may cause payment to be made of uncertain sums at uncertain times before maturity, and thus renders it impossible to say how much, if anything, will be due at maturity, renders the note non-negotiable. *Lincoln Nat. Bank v. Perry,* 66 Fed. 887; *Commercial Nat. Bank of Chicago v. Consumers' Brewing Co.,* 16 App. Cas. (D. C.) 186; *Continental Nat. Bank of Chicago v. Wells,* 73 Wis. 332; *Smith v. Marland,* 59 Ia. 645; *South Bend Iron Works v. Paddock,* 37 Kan. 510; *Commercial Nat. Bank of Selma v. Crenshaw,* 103 Ala. 497. In *Lincoln Nat. Bank v. Perry,* the note contained an agreement that if the collateral security deposited to secure its payment should depreciate at any time prior to maturity, the payee or holder might call for further se-

curity, and, if such further security was not furnished in two days, might sell the collateral at once. It was held non-negotiable. The court said:

"One of the chief requisites of a negotiable note or bill is that it shall show with certainty the amount payable thereon at maturity and that it shall not be cumbered with conditions which render the amount then payable uncertain. * * * It frequently happens that notes discounted by banks contain a statement that certain securities have been deposited as collateral to secure their payment, together with a stipulation authorizing a sale of such securities, in a certain manner, at the maturity of the paper, if it is not then paid. Such recitals and stipulations do not render the time or fact of payment, nor the amount to be paid at maturity, in the least degree uncertain; and for that reason it is generally held that they do not impair the negotiability of a note that is, in other respects, so drawn as to satisfy the requirements of the law merchant. * * * It is manifest, however, that an important element of certainty is destroyed by a collateral agreement appended to a note which may cause a payment to be made thereon of an uncertain sum at an uncertain time before maturity, and thus render the amount payable at maturity somewhat less than the amount specified on the face of the paper. A note of that description, which carries with it the probability, or even the possibility, that it may be partially or wholly extinguished before maturity, differs essentially from bank bills and other forms of currency which negotiable paper is supposed to resemble, and whose functions it is intended to perform. It has accordingly been held in several well-considered cases that stipulations of that nature embodied in a promissory note will impair its negotiability."

In *Commercial Nat. Bank of Chicago v. Consumers' Brewing Company,* the provision was that the principal should be "curtailed monthly," but without specifying in what amount. There was also a provision for sale of collateral in case it depreciated before maturity and further

security was not given, but it was not stipulated that the principal should become due in event of such default. The note was held non-negotiable. The court distinguished cases where the principal is made payable at the makers' option before maturity, where the maker has the privilege of paying a certain proportion upon recurring interest periods, and where the note is payable in fixed instalments. In all these cases, the stipulations in question merely fix different periods of maturity for all or part of the principal. But it has long been settled that the time when the instalments are severally payable must be fixed in some way. *Moffat v. Edwards,* Car. & Mar. (Eng.) 16. Where a note is payable "on or before" a day certain, there is a privilege of maturing the whole which does not affect negotiability. On the other hand, stipulations of the kind under consideration do not provide for maturing any part of an instrument, but simply for payment thereon of uncertain sums at uncertain times. The case at bar is clearer even than those cited, and must be governed by the principle they establish.

The other point has been disposed of in a number of recent decisions. *Lantry v. French,* 33 Neb. 524; *Grand Island Savings & Loan Ass'n v. Moore,* 40 Neb. 686; *Seieroe v. First Nat. Bank,* 50 Neb. 612; *Bradbury v. Kinney,* 63 Neb. 754; *Consterdine v. Moore,* 65 Neb. 291; *Garnett v. Meyers,* 65 Neb. 280; *Kendall v. Selby,* 66 Neb. 60.

In *Garnett v. Meyers,* this court said it was "well settled in this state that, although a note is absolute in form, every provision affecting the same, the amount, or manner of payment—that is, the contract, in regard to the indebtedness itself, contained in a mortgage given to secure it, and made contemporaneously—affects the note in precisely the same manner, and to the same extent, as though included with it on the same piece of paper, as to all persons chargeable with notice."

As a rehearing has been ordered in *Garnett v. Meyers,* upon other grounds, however, and as *Kendall v. Selby* follows that case, counsel have questioned the soundness of

the rule announced, claiming that it is contrary to prior decisions of this court and at variance with the authorities. It is undoubtedly true that a note otherwise negotiable is not rendered non-negotiable merely by a provision for or reference to collateral security. *Fleckner v. United States Bank,* 8 Wheat. (U. S.) 338; *Towne v. Rice,* 122 Mass. 67; *Blumenthal v. Jassoy,* 29 Minn. 177; *Knipper v. Chase,* 7 Ia. 145. The statements in prior decisions of this court, cited by counsel, are to be referred to this rule. *Heard v. Dubuque County Bank,* 8 Neb. 10; *Dobbins v. Overman,* 17 Neb. 163; *Stark v. Olsen,* 44 Neb. 646. But in cases of this sort, there is nothing in the provision of the note, or the agreement as to security referred to therein, affecting the terms of the note as to the indebtedness thereby created. If there were, it would be another matter. In such cases, where the agreement is in the note itself, negotiability is destroyed. *Continental Nat. Bank v. Wells,* 73 Wis. 332; *Lincoln Nat. Bank v. Perry, supra; American Exchange Bank v. Blanchard,* 7 Allen (Mass.), 333; *Goodenow v. Curtis,* 18 Mich. 298. Hence it is clear that the decisions in question are in no way counter to the doctrine that, when executed together and as a part of one transaction, a note and mortgage securing it are to be construed together and as one instrument. Such is the general rule with respect to other contracts. *Edling v. Bradford,* 30 Neb. 593. And it has been applied to notes and mortgages securing them, when executed at the same time, repeatedly. *Phelps v. Mayers,* 126 Cal. 549; *Brownlee v. Arnold,* 60 Mo. 79; *Muzzy v. Knight,* 8 Kan. 456; *Cabbell v. Knote,* 2 Kan. App. 68. Also to notes and other contemporaneous agreements as to the mode or conditions of payment. *Hill v. Huntress,* 43 N. H. 480; *Berry v. Wisdom,* 3 Ohio St. 241; *Wood v. Ridgeville College,* 114 Ind. 320. Applying this rule, it is obvious that the provisions as to the terms and manner of payment contained in the mortgage may be such as to make the note non-negotiable as to all persons chargeable with notice thereof.

It is suggested that in the case at bar the note contains

no reference to the mortgage.    In *Garnett v. Meyers* and *Kendall v. Selby* the note contained an express reference to the mortgage, and that fact was regarded as sufficient to notify all holders that it did not contain the whole contract of the parties.   But the reference in the note is only one mode of charging the holder with notice.   Any other circumstance which serves to inform him of the agreement of the original parties, at the time of his purchase or before he parts with value in good faith, is equally efficacious.   In the case at bar, it appears that the plaintiff obtained the mortgage at the same time that it acquired the note, and as part of the same purchase.   In consequence it took with notice of the provisions of the mortgage as to the manner in which the note was to be paid, and was bound thereby.

We therefore recommend that the judgment be reversed and the cause remanded for a new trial.

DUFFIE and KIRKPATRICK, CC., concur.

By the Court:   For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause is remanded for a new trial.

REVERSED.