Iowa National Bank, Appellant, v. W. U. Carter, Appellee.

Bills and notes: *Bona fide* HOLDER: BURDEN OF PROOF: EVIDENCE.
1   The transferee of a note has the burden of showing that he took it in good faith before maturity, for value in due course of business, and without notice of infirmity or defect in the title of the person negotiating it, as against a defense of breach of faith in its transfer. In the instant case the notes in suit were given for the price of machinery sold on a warranty, and the evidence is held to justify a finding that the seller agreed to return them in case the warranty was not made good, and that the same were transferred to plaintiff in breach of the warranty.

Same: *Bona fide* PURCHASER: EVIDENCE. One having knowledge of
2   facts sufficient to excite a suspicion as to the payee's right to transfer the same, and who refrains from making an investigation lest a defense to the same is disclosed, is not a good faith purchaser. In the instant case the evidence was held to justify a finding that the plaintiff holding the notes in suit as collateral and as purchaser, was not a *bona fide* transferee for value and without notice of any defense.

Same: NEGOTIABILITY: UNCERTAINTY AS TO TIME OF PAYMENT AND
3   AMOUNT. To render a note negotiable it must be certain both as to time and amount of payment. In the instant case the notes were given in connection with a chattel mortgage securing the same, which provided that the whole debt should become due in case of sale or removal of the property from the county without the consent of the mortgagee, or in case the mortgagee deemed himself insecure, and it is held that this provision rendered the notes uncertain, both as to time of payment and amount, and therefore they were nonnegotiable and subject to the defense that plaintiff was not a *bona fide* transferee, although he may have had no knowledge or notice of said provision when he took the notes.

*Appeal from Polk District Court.*—Hon. Hugh Brennan, Judge.

Tuesday, November 23, 1909.

SUIT in equity upon three certain promissory notes made by defendant to the Port Huron Machinery Company, Limited, or order, and by it assigned or indorsed to plaintiff, and to foreclose a certain chattel mortgage made to secure said notes. Defendant pleaded that the notes were delivered without authority, and contrary to an agreement between the parties or their representatives; that the notes were given in consideration of the sale of a shredder by the Port Huron Company to defendant, which shredder was sold with a warranty, and which warranty was not made good; that the notes and mortgage were and are without any consideration, and are therefore void. It was also alleged that plaintiff is not a good-faith holder of the notes for value, and that it, in fact, had notice of all defenses thereto. Upon these and perhaps some minor issues the case was tried to the court, resulting in a decree dismissing plaintiff's petition, and plaintiff appeals.—*Affirmed.*

*Dunshee & Haines,* for appellant.

*Yoss & Wallace* and *Thos. J. Guthrie,* for appellee.

DEEMER, J.—Upon most of the material issues in the case there is a sharp conflict in the testimony. It is conceded, however, that the notes and mortgage in suit represent the purchase price of a corn husker and

1. BILLS AND NOTES: *bona fide* holder: burden of proof: evidence.

shredder sold by the Port Huron Machinery Company, a jobbing institution in the city of Des Moines, handling mainly the manufactured products of the Port Huron Engine & Thresher Company of Port Huron, Mich. The sale was made to defendant, Carter, during the year 1906, and the property was shipped to the purchaser at North English, in Iowa County. By the terms of the contract defendant was to

execute notes and mortgages upon the arrival of the machine. There was an express warranty of the machine, and it was provided that, if the purchaser was not satisfied, a test was to be had, local ·farmers to be selected according to the terms of the contract as judges. A refusal to submit to the test was to be accepted as a waiver of the warranties. Defendant refused to execute the notes and mortgage when the machine arrived, claiming that he had the right to, or would, insist upon trying it before executing the notes and security. This was acceded to by the jobbing company upon condition that Carter would execute the notes and securities and deposit them in a bank at North English, to be delivered to the company after the machine had been tested to the satisfaction of Carter, and whenever he might order their delivery. We now quote the following statement from appellant's brief:

Carter therefore executed the notes and mortgage and left ·them in the North English Bank, and took the machine and tried it. After a day or two, he complained to the jobber that the machine was not satisfactory, and they sent their expert down from Des Moines. The Des Moines expert failed to satisfy him, whereupon Mr. Carter sent a registered letter to the manufacturer in Michigan, in accordance with the terms of the warranty, demanding a competitive test. The manufacturer sent its expert to hold the test, but upon arrival the parties failed to agree, and the test was never held. The reasons· for the failure to have the test are disputed. Mr. Carter, however, ordered the bank to deliver the notes over to Mr. West, who is the manager of the jobbing company in Des Moines, and the notes were delivered to West, and taken to Des Moines, and turned over to the bank. Carter claims, as will appear more fully hereafter, that the notes were delivered on condition that they were not to be put in circulation, but were to be returned if the machine did not later on prove satisfactory. The three notes were by their terms to mature in one, two and three years after date, and, not being salable, were deposited with the bank as collateral security

for a big loan which the jobbing company had from the Iowa National Bank.

Plaintiff bank claims that a year later, and when one of the notes was about to mature, it was withdrawn from the collateral account and discounted by it. As originally written, the notes were executed November 19, 1906, and matured January 1, 1907, 1908 and 1909, respectively. As they were not executed according to contract, but pursuant to a modified agreement, the dates of maturity were changed to January 1, 1908, 1909 and 1910, respectively, and interest was to run after October 1, 1907, instead of from date. This was due, so appellee Carter claims, to an agreement made in the late fall or early winter of 1906, after the machine company had failed to make the machine work, to the effect that the machine company was to receive the notes so changed from the North English bank, hold and not transfer them;

And that at the commencement of the 1907 corn shredding season the machine company was to send its agents to North English and make said machine operate, and that in case it did not, or could not, then it was to deliver back to Mr. Carter the three notes; that the notes were turned over to said company, and, that in violation of said agreement and in breach of faith, the said machine company transferred the same to the appellant, if at all; that the agents of the machine company never afterwards appeared to place said machine in operation, and that said machine never did or was thereafter operated, and was worthless to appellee, and the consideration of said notes wholly failed.

Appellee also claims that the notes, if transferred to plaintiff at all, were given it as collateral security for a pre-existing debt of the machinery company; that the bank, even if a purchaser of any of them, is not a good-faith holder; and that the notes are not negotiable for the reason that in virtue of a provision in the chattel mortgage

which was executed as a part of the transaction the time and amount of payment were uncertain. Upon the issues and claims thus stated the case was tried to the court, resulting in a finding that plaintiff is not a *bona fide* holder of the notes, and that the equities were with the defendant, and a decree was entered dismissing plaintiff's petition.

The appeal calls for a determination of certain issues of fact which are in dispute, and for a statement of the law applicable to the facts so found. It is not necessary, as we view it, to go into all the matters argued by counsel, for the way seems clear for a disposition of the controversy upon well-settled rules of law. That there was a warranty of the machine is conceded, and it is also agreed that the dates fixed for the maturity of the notes and the time when interest was to begin were changed and altered by writing said dates and times over the ones originally given; thus creating an apparent alteration of the notes. That this change was made pursuant to some sort of an agreement can not well be questioned. There is a dispute as to what this agreement really was. Appellee says that, as the machinery company had failed to make the machine work to his satisfaction during the year 1906, it was agreed that the date of the maturity of the notes should be changed as well as the time when the interest should begin to run, that the agent of the machine company was to take the notes from the North English bank to Des Moines, and deliver them to his company, there to be held by it and not transferred; and that its agents should return during the corn-shredding season of the year 1907, and make the machine work satisfactorily or agreeably to the warranties, and upon failure to do so, was to return the notes and the mortgage made to secure the same. He further claims that, in violation of this agreement, the machine company immediately deposited the notes with plaintiff as collateral security for a pre-existing debt, and that it never returned to try and make the machine work or put it in condition

to meet the warranties. Further, it is contended that the machine in its then condition was wholly worthless, and of no value for the purpose for which it was purchased.

Appellant presents a very different version of the affair. The agent of the machine company testified that he was trying to get defendant Carter to agree to a test in the fall or winter of 1906, that Carter would not agree to do so, and that the agent (West) then "informed him clearly that he must enter a competitive contest or make settlement, and the whole matter was then compromised by giving Carter one year more time, and Carter went into the house and telephoned the bank to deliver the securities which had already been executed and were lying in the hands of the bank subject to Carter's order after they had changed the due dates by making them one year later." Here then is a square conflict in the testimony. Appellant bank contends that the agent's version of the affair is the only reasonable or probable one, while appellee, with just as much assurance, claims that his version is the only sensible one, and that his testimony is so corroborated by other testimony that it must be accepted as true. Appellee, also, says that as the trial court found for him, this conclusion should be placed in the balance, and made to preponderate in his favor. Both the agent, West, and defendant, Carter, have some corroborating testimony, but West finally admitted that he "promised Carter that, if he would house the machine properly, he would send a man down to North English the following season and lend him friendly assistance in starting the machine." But he further testified that nothing whatever was said about returning the note or engaging in a competitive contest the following year. We have gone over the testimony upon this issue with care, and are constrained to hold that appellee has established his contention by the fair preponderance of the testimony. He is directly corroborated by two disinterested witnesses, and the finding of the trial court in this

connection is amply justified. The machine company did
not comply with its agreement, but, on the contrary, it
immediately hypothecated the notes and mortgage, and, just
before the maturity of one of the notes, plaintiff claims
to have purchased it. The machine company, although
notified, failed to make any tests in the year 1907, or to do
anything toward making the shredder work, and the testi-
mony shows that it is practically worthless for the purpose
intended. The great preponderance of the testimony shows
that the machine does not comply with the warranty, and
that unless plaintiff is a holder of the notes for value, or
that the notes were received in settlement of the trans-
action, the warranty being waived, defendant has presented
a complete defense. The testimony, as we think, fails to
show a settlement or such a settlement as is claimed for
appellant, and, unless it appears that appellant is a *bona
fide* holder of the notes, or one of them, there can be no
recovery. This doctrine is now announced by statute, and
is supported by numerous authorities. See Code Supp.
1907, sections 3060-a55, 3060-a59; *Keegan v. Rock,* 128
Iowa, 39; *McNight v. Parsons,* 136 Iowa, 390; *Dean v.
Nichols-Shepard Co.,* 95 Iowa, 89. By reason of the
above conclusion the burden of proof was cast upon plain-
tiff to show by a preponderance of the testimony that it is
a good-faith holder for value before maturity, and in the
usual course of business. Code Supp. 1907, sections
3060-a28, 3060-a55, 3060-a58, 3060-a59. Section 3060-
a52: "A holder in due course is a holder who has taken
the instrument under the following conditions: (1) That
the instrument is complete and regular upon its face, (2)
That he became the holder of it before it was overdue, and
without notice that it had been previously dishonored, if
such was the fact. (3) That he took it in good faith and
for value. (4) That at the time it was negotiated to him
he had no notice of any infirmity in the instrument or
defect in the title of the person negotiating it."

Assuming, under the present negotiable instruments law of this state, that one who takes negotiable paper as security for an antecedent debt is a holder for value, as 2. SAME: *bona fide* purchaser: evidence. would appear from section 3060-a25 of the Code Supplement of 1907, as construed in *Voss v. Chamberlain*, 139 Iowa, 569, still it does not follow that the bank is a good-faith holder, or that in equity it is entitled to recover upon the two notes which it holds as collateral. As to these collateral notes, it now appears that the debts for which they were and are pledged were created after plaintiff had received notice of the infirmities in the notes. Aside from this, however, we are constrained to hold that plaintiff has not met the burden imposed upon it of showing that it is a holder in due course and without notice either of the two notes as collateral or of the one as a purchaser. To set forth the testimony on this proposition would answer no useful purpose. It is sufficient to say that but two of the officers of the bank gave any testimony upon the subject, and that neither of these testified directly that he had no knowledge or notice of any defenses and claims made by defendant against the note. The transactions between the Port Huron Company and the bank were rather peculiar, and the trial court, having the witnesses before him, was perfectly justified in finding that plaintiff had failed to meet the burden imposed upon it. See *McNight v. Parsons, supra: Walters v. Rock* (N. D.) 115 N. W. 513. From the last cited case we quote the following as peculiarly applicable to the facts before us:

It may be true in this case that the plaintiff bought before maturity for value, and without notice of any defense; and yet he may not be a purchaser in good faith. He may, when he bought, have had knowledge of facts which excited in his mind such suspicions as to the paper that he feared to make an investigation lest it would disclose a defense, and therefore he carefully shut his eyes and bought in the dark. In such a case he would not be a purchaser in good faith. In this case the plaintiff is careful

not to state that he bought in good faith, nor does he offer any explanation of the circumstances surrounding the purchase. . . . The plaintiff, having the burden of proof, has failed to sustain it by positive evidence. The inference of his good faith to be drawn from the other facts sworn to by him is by no means strong, and the case discloses several circumstances which cast grave doubt upon the fact of his good faith in the transaction.

Taking the testimony as a whole, we are perfectly well satisfied that, as to the two notes held as collateral, plaintiff has failed to show that it is a *bona fide* holder for value. As to the note which it claims to have purchased or discounted just before its maturity, the testimony as to how this was done and as to when and how payment was made therefor is not very satisfactory, and the evidence as to good faith is not strong. Indeed, the transaction as detailed is somewhat unusual and the testimony unsatisfactory, in that neither of the officers of the bank were at all certain regarding the time when they learned that defendant was asserting his defenses to or claims against the note. The case in this respect is quite like *McNight v. Parsons, supra,* and other cases heretofore cited. There is some testimony for defendant which indicates actual notice on the part of some of the officers of the bank of the defenses to or claims made against the note which it is claimed was purchased before any actual money was paid thereon.

II. One other proposition is quite conclusive of the case. The notes and chattel mortgage were all executed at the same time, and as a part of the same transaction, and the chattel mortgage contained this provision: "If the said party of the first part shall sell, assign, dispose of, or attempt to sell, assign, or dispose of, or remove from said county of Iowa without the written consent of said Port Huron Machine Company, Limited, the

3. SAME: negotiability: uncertainty as to time of payment and amount.

whole or any part of said goods or chattels, or if at any time the said party of the second part . . . shall deem themselves insecure, then the whole amount of said sum of money in said notes mentioned, which shall not have been paid, . . . shall be immediately due and payable." Again, each note contained this provision: "In case of default in the payment of this note, the said Port Huron Machinery Company, Limited, shall have the option to declare any or all other notes given for the purchase price of said property to be at once due and payable." It is argued that these provisions render the notes uncertain both as to time and amount of payment.

It is fundamental, of course, that to make a note negotiable it must be certain both as to time and amount of payment. Section 3060-a1, Code Supp. 1907. By section 3060-a4 of the same Code it is provided: "An instrument is payable at a determinable future time, within the meaning of this act, which is expressed to be payable, (1) at a fixed period after date or sight; (2) on or before a fixed or determinable future time specified therein; or (3) on or before a fixed period after the occurrence of a specified event, which is certain to happen, though the time of happening be uncertain. An instrument payable upon a contingency is not negotiable, and the happening of the event does not cure the defect." Before the adoption of the negotiable instruments law, we had held that these provisions in a note and mortgage rendered it nonnegotiable. See *Smith v. Marland,* 59 Iowa, 645. See, also, *Culbertson v. Nelson,* 93 Iowa, 187-197; *Sawyers v. Campbell,* 107 Iowa, 397-402. Since the general adoption of the negotiable instruments act, the courts have held to the same doctrine. See *Roblee v. Bank,* 69 Neb. 180 (95 N. W. 61) which contains a review of the authorities upon this proposition.

We are satisfied that by reason of the recitals in the mortgage that not only the time of payment, but the amount thereof, was uncertain and subject to a contin-

gency, and that the notes were nonnegotiable, and are subject to the defenses pleaded in the hands of the holder, although he may have had no knowledge or notice thereof when he took the notes.

The decree seems to be right, and it is *affirmed.*