TUKEY MORTGAGE COMPANY, APPELLANT, v. FRANK E. PARKINS ET AL., APPELLEES.

285 N. W. 492

FILED APRIL 21, 1939. No. 30543.

*Edward F. Leary,* for appellant.

*James J. Fitzgerald, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

PAINE, J.

The plaintiff brought suit upon a promissory note, after releasing without consideration the second mortgage which secured the note. At the close of all the testimony, the plaintiff moved for a directed verdict, which was denied. The court then on its own motion discharged the jury and dismissed the plaintiff's petition. Plaintiff appeals.

On May 1, 1926, the defendants purchased a home in the exclusive Country Club district in Omaha from Theodore W. Metcalfe for $9,250. On May 5 defendants executed a first mortgage thereon to the Occidental Building & Loan Association for $6,250, and, as a part of the same consideration, executed a note to Theodore W. Metcalfe on the same day for $500, and secured the same by a second mortgage upon the same property. On September 8, 1926, Metcalfe sold and assigned said note to the plaintiff company without recourse, the note with interest amounting on that date to $513, and the plaintiff paying Metcalfe $384.75 in full settlement thereof. On the same day Metcalfe gave plaintiff an assignment of his $500 second mortgage in consideration of the sum of $1 and other valuable considerations, which assignment was duly recorded on September 16, 1926.

For some five years the defendants made payments to the plaintiff upon said note of $500, the note itself providing for monthly payments of $5 each, the last payment on said note being made on September 19, 1932, of $5.20 on principal and $4.80 on interest, total $10, according to the ledger page of plaintiff company, being exhibit No. 2, and thereafter the defendants were in default of payments upon the $500 note and mortgage. Defendants were also in default upon the payments of the first mortgage to the Occi-

dental Building & Loan Association, and after some negotiations on February 4, 1933, the defendants executed a deed of the home property to Gertrude McLaughlin, which deed was executed to her presumably as she was an employee of the Occidental Building & Loan Association, and in consideration of said deed being executed by the defendants they were given an option to buy back the property for the sum of $5,308.79, then due, subject to all unpaid taxes and the plaintiff's mortgage of $500.

On July 20, 1933, the plaintiff, Tukey Mortgage Company, by H. A. Tukey, its president, executed a marginal release, on the record in the office of the register of deeds, of the $500 mortgage, reciting that it was in consideration of full payment of the within mortgage.

On June 13, 1933, the Home Owners Loan Act of 1933 (United States Code, Vol. 12, p. 989) became effective, and subdivision (g), section 4, of this act provided relief in the way of refinancing by a home owners loan, as follows: "To redeem or recover homes lost by the owners by foreclosure or forced sale by a trustee under a deed of trust or under power of attorney, or by voluntary surrender to the mortgagee," within three years of such exchange or advance.

Under this section of the U. S. Code, the Occidental Building & Loan Association, or the defendants herein, made an application to the HOLC, and on October 28, 1933, the property was refinanced. The HOLC took a first mortgage for $5,540, and the Occidental Building & Loan Association released its mortgage upon payment of $5,250, and on November 1, 1933, to carry out the refinancing by the HOLC, Gertrude McLaughlin, on behalf of her employer, Occidental Building & Loan Association, executed a deed to the property to the defendants, Frank E. Parkins and Ruth W. Parkins, who continued to occupy the property until March 1, 1937, when it was sold for $6,000.

On August 19, 1937, the Tukey Mortgage Company filed its transcript on appeal from the municipal court, and on August 24, 1937, filed its petition in the district court for Douglas county, bringing suit in the case at bar on the $500

note originally given to Theodore W. Metcalfe, and by him sold and assigned without recourse to the Tukey Mortgage Company, plaintiff. Said petition alleged that there was a balance due and owing on said note in the sum of $427.17, with interest at 7.2 per cent. per annum from January 1, 1936.

To this the defendants filed an answer June 2, 1938, admitting the execution, delivery, and assignment of the note, further alleging that a second mortgage for $500 was given as security for the payment of said note, and that the plaintiff released, canceled, and discharged said note for a valuable consideration, and that said release of the mortgage securing said note operated as a release and discharge of the promissory note.

Defendants further allege that the plaintiff released said mortgage without the mortgagor's knowledge or consent, at a time when the value of the lands released exceeded the amount of all debts and liens against said lands; that because of said action on the part of the plaintiff, plaintiff waived its right to hold the defendants personally liable on said note; that defendants have been damaged by the depreciation in the real estate value of the property described because of the conduct of the plaintiff in releasing said second mortgage, and pray that the plaintiff's petition be dismissed and they recover their costs expended.

After a trial to the jury, plaintiff moved the court to direct the jury to return a verdict in favor of the plaintiff. Said motion was overruled. The court then directed that, as there was no question for the jury to determine, said jury be discharged and the cause of action be dismissed at the costs of plaintiff. From such findings the plaintiff appealed.

There is no conflict in the evidence, and the only proposition for determination is a legal question: "Can a mortgagee who releases a mortgage as to all lands therein described to a grantee of the mortgagor and without the latter's consent, hold such mortgagor personally liable for the debt secured when the actual value of the lands so released ex-

ceeds or equals the indebtedness secured by such mortgage?" (Brief of appellees.)

In the argument in the district court, and also in this court, the defendants rely upon the case of *Petters v. Storm,* 132 Neb. 542, 272 N. W. 409, in which this question was answered in the negative, and on which decision Judge Yeager relied when he dismissed the plaintiff's petition.

The plaintiff insists that the value of the property is immaterial; that Tukey believed the property was worth no more than the Occidental mortgage against it. The plaintiff also denies that Parkins ever made an actual sale of the property back to the Occidental, and yet the defendants gave a deed to an employee of the Occidental, and took back a legal option to repurchase it, and then, on the strength of the option to repurchase, successfully refinanced it through the HOLC. It is argued by the plaintiff that the Occidental could not take a deed on property which bore a second mortgage without assuming the second mortgage, and for this reason Tukey was asked to release his second mortgage, and assuming that the second mortgage had no value he released it, for plaintiff claims second mortgages were valueless in 1933, and that the release of the $500 mortgage was immaterial because the defendants were, therefore, not damaged by the release. It was also argued by the plaintiff that the case of *Petters v. Storm, supra,* is not based upon the same set of facts.

The defendants call attention to the fact that the plaintiff only paid $384.75 to Metcalfe for the second mortgage note, and that plaintiff has collected in small payments $369, thereby losing only some $15 on the transaction, although they claim a balance still due from the defendants of $427.17, and argue that the plaintiff decided to accept this small loss for the sake of accommodating another finance company, and that plaintiff made no effort to notify or contact the defendants, and made no claim for payment of the note until just before the statute of limitations had run upon the note.

It has long been held to be the law that a mortgagee who

releases the mortgage to a grantee of the mortgagor, without the latter's consent, cannot hold such mortgagor personally liable for the debt when the value of the land released exceeds the indebtedness. 41 C. J. 719; *Insley v. Webb*, 122 Wash. 98, 209 Pac. 1093, 41 A. L. R. 274. More recent annotations on this subject will be found in 72 A. L. R. 389, 81 A. L. R. 1016, and the general rule is again stated in an annotation in 112 A. L. R. 1326, as follows: "Recent authorities support the well-settled rule that subsequent dealings between the mortgagee and a grantee of the mortgaged property, entered into without the consent of the mortgagor, may discharge the latter from personal liability to the mortgagee, wholly or at least *pro tanto*." This is supported by many decisions from 25 states, and from Nebraska is cited the case of *Petters v. Storm, supra,* the syllabus of which reads as follows: "A mortgagee who releases a mortgage, as to all lands therein described, to a grantee of the mortgagor without the latter's consent, cannot hold such mortgagor personally liable for the debt secured when the actual value of the lands so released exceeds or equals the indebtedness secured by such mortgage." See, also, *Roblee v. Union Stock Yards Nat. Bank,* 69 Neb. 180, 95 N. W. 61; *Kendall v. Selby,* 66 Neb. 60, 92 N. W. 178.

We believe the legal question in the case at bar is identical with the one in *Petters v. Storm, supra,* and we follow the holding there announced.

The action of the trial court in dismissing plaintiff's petition is correct, and the same is hereby

AFFIRMED.