### AT THE

## NOVEMBER SESSION 1871, IN BOSTON. ¦

PRESENT:

HON. REUBEN A. CHAPMAN, CHIEF JUSTICE.
HON. HORACE GRAY, JR., ⎫
HON. JOHN WELLS, ⎪
HON. JAMES D. COLT, ⎬ JUSTICES.
HON. SETH AMES, ⎪
HON. MARCUS MORTON, ⎭

## SUFFOLK COUNTY.

NATIONAL BANK OF NORTH AMERICA OF BOSTON *vs.*
CHARLES K. KIRBY.

The fact that a promissory note, the principal of which is payable in four years with inter-est annually, bears no indorsement of the receipt of either of three instalments of interest which have fallen due, does not of itself render the note subject, in the hands of a third person who then took it as collateral security, to equities existing between the original parties to it; but is a circumstance for the consideration of the jury, on the issue whether he took it in good faith and without notice of such defences.

CONTRACT on a promissory note dated at Boston May 5, 1863, signed by the defendant, and indorsed by him in blank, in which he promised to pay to his own order $1250 forty-eight months after date, with interest annually. Writ dated May 13, 1869.

The answer denied generally all the plaintiffs' allegations; and alleged that, if they should prove the execution of the note by the defendant, and that they were the holders of it, then they took it overdue from Joseph A. Veasie, and subject to all defences which might be made thereto against him; that he procured the note from the plaintiffs by false representations, and for a consideration which had wholly failed. Trial in the superior court before *Devens*, J., who made the following report thereof:

" After proof of the execution of the note, the defendant offered evidence tending to prove fraud and want of consideration in the obtaining of it by the party to whom it was originally delivered.

" The plaintiffs proved that they took the note, in connection with three others, on October 24, 1866, as collateral security for another note, of which an amount equal to the note in suit remains unpaid. At that time, however, no interest had been paid on the note, but the same was overdue; and the defendant requested the judge to rule that this amounted to a dishonor of the note, and would render it, in the hands of the plaintiffs, subject to the same defences as if the suit were between the original parties. But, for the purposes of the trial, the judge declined so to rule.

" The defendant then, with a view to avail himself of the same defence, offered evidence that the note was executed and delivered to the treasurer of the Connecticut Arms Company, Joseph A. Veasie, for a part subscription to the capital stock; that Veasie had been, from the date of the note to the time when it was pledged to the plaintiffs, in the habit of pledging similar notes, so given for subscriptions, to the plaintiffs' bank and other banks and individuals, as collateral security for loans to himself; that all the notes were printed in a book of blank notes, and were alike in dates, color and general appearance, but varied only in amount; that each subscriber gave four notes, payable in twelve, twenty-four, thirty-six and forty-eight months, with interest annually; that William S. Eaton was the only director in the bank who was ever interested in the Arms Company; that he subscribed in 1863 for stock, but sold out his right to take it, and never took it or gave any note for it; that this note was pledged, with **three**

others, as collateral security for a loan of $4000 made to Veasie; that among the collateral notes was one of John K. Porter, dated May 5, 1863, on forty-eight months, for $1250, which was also an Arms Company note; that Veasie stopped payment on December 31, 1866, before the maturity of the $4000 note; that the capital stock' of the Arms Company was $300,000, with a right to increase to $500,000, and its place of business was in Connecticut, but its treasurer's office was in Boston and the notes were executed and delivered there; and that Clement Willis, one of the plaintiffs' directors, had known Veasie thirty years, knew he was treasurer of the Arms Company, had heard of its organization from him, knew of his having in his possession notes given by subscribers for the stock, had seen some of the notes which were like the notes in suit, and knew that the defendant was a subscriber only from the note, which corresponded with other notes which he had been informed by Veasie were subscription notes.

" Eaton testified that he knew nothing of the loan for which this note in suit was taken as collateral. Willis testified that he did not remember to have seen this note before it was taken by the bank, but might have done so; that he was present at the directors' meeting, when the loan to Veasie was made, and this note was taken; that the bank passed on it, and this note was taken as collateral, with others, for a loan to Veasie; and that the bank has other Arms Company notes, but the witness could not state how many.

" John K. Hall, the plaintiffs' cashier, testified as follows: ' I do not particularly remember the taking of this note. I pay but little attention to what notes are taken as collateral, as they pass the board. I take pains to see that they are properly indorsed. This note was laid before the board. The application comes before the board; but the collateral is not examined by the board. I do not state in regard to this particular case. Never loan on collateral without knowing what the collateral is. Either it is passed upon by the board, or referred to a member of the board to examine. No record of what took place at this loan, except " Joseph A. Veasie, note, $4000, with collateral." The record

shows this loan was made at the board. We had this note in suit, in the bank; held it as collateral for Veasie's note of $4000.' The witness detailed the other collateral, as above stated.

"There being no other evidence of the facts and circumstances under which the bank obtained the note, or of any notice to the bank of the fraud or want of consideration as between the original parties, the plaintiffs requested the judge to rule that they were entitled to a verdict; and he did so rule *pro formâ*, and such verdict was accordingly rendered for the amount of the note and interest, and by request of the defendant the case is reported for the revision of the supreme judicial court."

*T. P. Proctor*, for the defendant.

*H. C. Hutchins & H. H. Currier*, for the plaintiffs.

COLT, J. It must be assumed, upon the case stated, that the note in suit was originally obtained from the defendant by fraud and without consideration; because, upon the proof offered, it would have been competent, if the case had been submitted to them, for the jury so to have found. The burden was thus placed upon the plaintiffs, of showing that they took the note for a valuable consideration, in the usual course of business, before maturity, and in good faith. It would be sufficient to meet this burden, for the plaintiffs to show that they took it as collateral security; and then, if there was nothing in the transaction itself, and no proof produced from other sources, to show want of good faith, or actual or constructive notice of existing defences between the original parties, the plaintiffs must prevail. *Blanchard* v. *Stevens*, 3 Cush. 162. *Wheeler* v. *Guild*, 20 Pick. 545, 553.

This note was due at the end of forty-eight months, and the interest was made payable annually. It was taken by the plaintiffs before maturity; but, upon its appearing that no interest had been paid for two years or more, the court was asked to rule that this alone amounted to a dishonor, and would subject the note to all defences. It is to be noticed, that the fact relied on is only that the interest had not been paid; not that any knowledge of it was ever brought home to the plaintiffs beyond the fact that no payments were indorsed. The court declined to rule as requested; and we are of opinion that the mere fact that there

appears to be no indorsement of one or more instalments of interest will not justify the ruling asked for.

If, as it is argued, it be true that the failure to pay interest ever as matter of law amounts to a dishonor of a note, it can only affect one who has knowledge of the fact. Payment of interest is not always indorsed, and other evidence is often relied on to prove it. Want of indorsement does not apprise the party, to whom such note is transferred, that there has been no payment; and when the note is only taken as collateral, and accuracy is not required in ascertaining the amount due for interest, the fact that overdue interest is not indorsed might have slight influence in putting the purchaser upon his inquiry. It has indeed been held by this court, that a note, the principal of which is payable by instalments, is overdue when the first instalment is overdue and unpaid, and is thereby subject to all equities between the original parties. *Vinton* v. *King*, 4 Allen, 562. Such a note is a single contract, and the party to whom it is transferred must take it with notice that, as to the overdue instalment, the maker may have a justifiable cause for withholding payment, which may affect the whole contract. But in its effect upon the credit of a note, it is manifest that a failure to pay interest is not to be ranked with a failure to pay principal. Interest is an incident of the debt, and differs from it in many respects. It is not subject to protest and notice to indorsers, or days of grace according to the law merchant. Interest is not recovered on overdue interest; and the statute of limitations does not run against it until the principal is due. The holder of a note with interest payable annually loses no rights against the parties to it, whether makers or indorsers, by neglecting to demand it; and he has the election to do so, or wait and collect it all with the principal. In *Brooks* v. *Mitchell*, 9 M. & W. 15, it was held that a promissory note payable on demand cannot be treated as overdue so as to affect an indorser with equities, merely because it is indorsed a number of years after its date, and no interest has been paid on it for several years before such transfer; and the same was held in *Boss* v. *Hewitt*, 15 Wisc. 260. We are referred to no case in which it has been held that failure to pay interest, standing alone, is to

be regarded sufficient in law to throw such discredit upon the principal security upon which it is due, as to subject the holder, to the full extent of the security, to antecedent equities.

There is a large class of negotiable securities, the principal of which is payable only at the end of many years, but with interest payable either annually or semi-annually; and many of the notes given in the purchase of real estate and secured by mortgage, especially in the country, are of this class, as are most of the obligations for debts contracted by public and many of those incurred by private corporations, and it is important that the value due to their negotiable character should not be impaired by new rules, tending to lessen their currency and credit. *Henry* v. *Flagg*, 13 Met. 64. *Ferry* v. *Ferry*, 2 Cush. 92. *Sparhawk* v. *Wills*, 6 Gray, 163. *The City* v. *Lamson*, 9 Wallace, 477.

But while nonpayment of interest is not to be allowed the effect here claimed for it, it is still a fact proper to be considered by the jury, in connection with other circumstances, on the question whether the holder is entitled to the position of one who has taken in good faith and without actual or constructive notice of existing defences. And in the opinion of the court, the defendant should have been permitted to go to the jury, with proper instructions from the court, upon the evidence reported in this case.　　　　　　　　　　　　　　　　　　*Verdict set aside.*