(68 Misc. Rep. 153.)

CITIZENS' SAVINGS BANK v. COUSE et al.

(Supreme Court, Trial Term, Wayne County.   June 23, 1910.)

1. BANKS AND BANKING (§ 302*)—SAVINGS BANKS—REGULATION—LOANS.
    Banking Law (Consol. Laws, c. 2) § 150, prohibiting savings banks from loaning money on notes, drafts, or other personal security, does not necessarily render void the purchase of notes by a savings bank.
    [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 1190; Dec. Dig. § 302.*]

2. EVIDENCE (§ 80*)—FOREIGN LAW—PRESUMPTIONS.
    In an action by an Ohio savings bank on certain notes, it would not be presumed, in the absence of allegation or proof, that there was a statute in Ohio like New York Banking Law (Consol. Laws, c. 2) § 150, prohibiting savings banks from loaning money on notes, drafts, or other personal security, and hence that plaintiff's purchase of the notes sued on was invalid.
    [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 101; Dec. Dig. § 80.*]

3. NEW TRIAL (§ 40*)—REFUSAL TO SUBMIT QUESTION TO JURY—REQUEST AT TRIAL.
    Where, in an action on a note, it appeared that there was one year's interest due and unpaid on the note when plaintiff purchased it, and defendant asked to go to the jury on the question of plaintiff's good faith in purchasing, which the court refused, defendant was entitled to 'raise for the first time on a motion for new trial the objection that the cir-

cumstances were sufficient to put plaintiff on inquiry as to the amount due.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. § 65; Dec. Dig. § 40.*]

4. BILLS AND NOTES (§ 344*)—NEGOTIATION—BONA FIDE PURCHASER—NOTICE OF DEFAULT—UNPAID INTEREST.

Where a note provided that interest was payable annually, a default of interest appearing thereon when it was transferred to plaintiff was sufficient to put plaintiff on inquiry as to any defects and to require submission of plaintiff's bona fides to the jury.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 868; Dec. Dig. § 344.*]

Action by the Citizens' Savings Bank against Lorenzo Couse and others. On defendants' motion to set aside a verdict for plaintiff and for a new trial on all the grounds authorized by Code Civ. Proc. § 999. Denied.

De L. Stow, for plaintiff.
Teller & Hunt, for defendants.

FOOTE, J. On June 25, 1907, defendants made their promissory note, dated at Savannah, N. Y., for $1,000, payable to the order of McLaughlin Bros., on September 1, 1908, at the Briggs National Bank of Clyde, N. Y., with interest at 6 per cent. per annum, "interest payable annually." Before the note was delivered to McLaughlin Bros., indorsements were made of payments thereon to the amount of $450. The defendants claim an error was made in the amount of these indorsements, and that the payments actually made amounted to $650. By their answer they put in issue the making of the note and its transfer from the payees to the plaintiff and the claim of the plaintiff to be a bona fide purchaser.

. Plaintiff, a banking corporation of the state of Ohio, located at Columbus, where the payees of the note reside and carry on business, purchased this note from the payees on the 29th day of July, 1908, paying therefor the sum of $546.89. It was one of a number of notes purchased by plaintiff from McLaughlin Bros. on that day, for which plaintiff paid McLaughlin Bros., by check, $8,228.08.

There were two principal grounds of error urged by defendants' counsel for setting aside the verdict in this case. The first is that, in the absence of evidence to the contrary, the court should have held that there is a presumption that the same statute exists in Ohio which is found in section 150 of the banking law (Consol. Laws, c. 2) of this state, as follows:

"Trustees of any savings bank shall not loan the moneys deposited with them, or any part thereof, upon notes, bills of exchange, drafts, or any other personal security whatever."

And that the court should have also held that, assuming such a statute to exist in Ohio, the purchase of this note by the plaintiff was illegal and void, and that the plaintiff acquired no title to the note.

It is probably a sufficient answer to this contention that plaintiff does not claim to have loaned any money upon this note. The proof

is that the plaintiff bought the note. But if our statute would be held to prohibit the purchase of notes by savings banks, it would not follow that by such a purchase the bank would get no title to a note which was at the time a valid and subsisting obligation of the makers. While the statute prohibits the loan of moneys upon securities of that character, it does not say that the transaction shall be void.

But, however this may be, I am of the opinion that no presumption can be indulged that the statute laws regulating savings banks in Ohio are the same as ours; certainly, not for the purpose of working a forfeiture or subjecting the plaintiff to a loss of money invested by its officers in good faith and without notice.

The rule upon this subject is thus stated by Judge Denio in Whitford v. Panama R. R. Co., 23 N. Y. 465:

> "And where the condition of the law of another state becomes material and no evidence has been offered concerning it, our courts will presume that the general principles of the common law, which we always consider to be consonant with reason and natural justice, prevail there. But no such presumption obtains respecting the positive statute law of the state. There is generally no probability in point of fact, and there is never any presumption of law that other states or countries have established precisely or substantially the same arbitrary rules which the domestic Legislature has seen fit to enact."

And in Harris v. White, 81 N. Y. 532, 544, Chief Justice Folger said:

> "The defendant has made no proof of what is the law of those states on this subject. He has not even pleaded that by that law this contract was illegal. As a general rule, courts of one state, in the absence of proof and allegations otherwise, will presume that the laws of another state are like those of their own state. It is doubted, however, whether this presumption could be made of statute law. McCulloch v. Norwood, 58 N. Y. 567; Wilcox Co. v. Green, 72 N. Y. 17. It will not be made of statutes imposing a penalty or forfeiture. And it has been declared that a court cannot take notice judicially of any laws of other states not according to the common law"—citing Holmes v. Boughton, 10 Wend. 75, 25 Am. Dec. 536.

It appeared from the evidence that plaintiff had been purchasing notes from McLaughlin Bros. for a great number of years in a very large amount. Certainly this court cannot presume that these transactions were had in violation of positive prohibition of the statutory law of the state of Ohio. If there be such a prohibitive statute, it should have been alleged and proved by the defendants to be available to them in this case.

The second point made upon this motion is that this note upon its face appeared to have been dishonored at the time it was purchased by plaintiff from the fact that interest upon the note was made payable annually, and that at the date plaintiff purchased the note, July 29, 1908, the first year's interest had been overdue from the 25th of June of that year, and did not appear to have been paid, and in fact had not been paid. Defendant's contention is that a default in the payment of the interest makes the paper overdue, and so the plaintiff not a holder in due course within the intent and meaning of section 91 of the negotiable instrument law (Consol. Laws, c. 38). That section provides as follows:

124 N.Y.S.—6

"A holder in due course is a holder who has taken the instrument under the following conditions: (1) That it is complete and regular upon its face. (2) That he became the holder of it before it was overdue and without notice that it had been previously dishonored, if such was the fact. (3) That he took it in good faith and for value. (4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

This statute does not change the rules upon this subject as they existed in this state before its adoption.

Defendants' counsel relies upon the case of Newell v. Gregg, 51 Barb. 263. It was held in that case that the interest is a portion of the debt, and if, when the note is sold to a third person by the payee, the year's interest is past due, the note is then dishonored. The note in that case was for $200, payable two years after date with annual interest. It was transferred after the first annual interest had become due and was unpaid, and the question in the case was whether that circumstance prevented the purchaser from becoming a bona fide holder so as to protect him against a defense good as between the parties to the note.

I am unable to distinguish that case from this. The note here had a shorter time to run; but clearly there was one year's interest due upon the note in this case on the 25th of June, 1908, and it is not claimed that this interest had been paid. This circumstance was sufficient to put the plaintiff upon inquiry, and to at least present the question for submission to the jury as to the bona fides of the plaintiff's purchase of the note after such inquiry.

While this question was not raised at the trial, it is properly presented upon this motion, as the defendants asked to go to the jury upon the question of the good faith of the plaintiff in purchasing this note, which request was refused by the court. The authority of the case of Newell v. Gregg has not been overthrown by subsequent decisions in this state, so far as I am aware, and I feel bound to follow it, notwithstanding the fact that a different rule prevails in other jurisdictions. Kelley v. Whitney, 45 Wis. 110, 30 Am. Rep. 697; National Bank of North America v. Kirby, 108 Mass. 497; Patterson v. Wright, 64 Wis. 289, 25 N. W. 10; Morgan v. United States, 113 U. S. 476, 5 Sup. Ct. 588, 28 L. Ed. 1044; Thompson v. Perrine, 103 U. S. 589, 1 Sup. Ct. 564, 568, 27 L. Ed. 298; Cromwell v. County of Sac, 96 U. S. 51, 24 L. Ed. 681.

It is claimed by plaintiff that the authority of Newell v. Gregg has been overthrown by the case of Town of Ontario v. Hill, 33 Hun, 250, a decision in this department, affirmed 99 N. Y. 324, 1 N. E. 887. It is true that in the course of the long opinion by Mr. Justice Barker it is said:

"If any of the coupons attached to the several bonds had matured before the bonds were transferred to the bona fide holder, that circumstance did not render the bonds and the subsequent maturing coupons dishonored paper so as to subject them in the hands of a purchaser for value to defenses good as against the original holder"—citing Cromwell v. County of Sac; National Bank of North America v. Kirby, supra.

The question does not appear to have been directly involved in that case, and Newell v. Gregg was not cited by the court or in the

briefs of counsel, and apparently was not brought to the attention of the court. Certainly there was no intention shown to overrule that case.

Considering, as I do, Newell v. Gregg as controlling upon me at this time, I must hold that the defendants were entitled to go to the jury upon the question as to whether the plaintiff was a holder in due course of this note in view of the dishonor of the note by the nonpayment of interest; but, as the case stood at the close of the trial, there was no defense available to the defendants as against the plaintiff if the plaintiff was not a bona fide holder, except that founded upon the alleged payment of $200 upon the note which had not been indorsed thereon.

In view of this, I think the defendants are entitled to an order setting aside the verdict and for a new trial, unless the plaintiff is willing to stipulate to reduce the verdict by the sum of $200, with interest thereon from the date of the note to the date the verdict was rendered, and, if such a stipulation be given, then the motion should be denied.