In the Matter of the Estate of CHARLES B. PHILPOTT, Deceased,
ED. LE CLERC, Claimant, Appellee, v. EVA B. PHILPOTT,
Executrix, Appellant.

**BILLS AND NOTES:  Demand Note—Unreasonable Delay in Nego-
tiating—Dishonor—Jury Question.**  A demand note, negotiated an
unreasonable time after its date, proclaims to all the world, ''I
have been dishonored. Take me at your peril.''  (Secs. 3060-a7,
3060-a53, Sup. Code, 1913.)   What constitutes an unreasonable
delay depends on ''the facts of the particular case.''  (Sec.
3060-a193, Sup. Code, 1913.)   In instant case, the negotiation
was over seven months after the issue of the note.  *Held,* the
court was in error in not submitting the question of unreason-
able delay to the jury.

**BILLS AND NOTES:  Irregular on Face—Negotiability Destroyed.**
A note payable ''on or before four —— after date,'' is not ''com-
plete and regular on its face,'' is not negotiable, and he who
takes the same is not a ''holder in due course.''  (Sec. 3060-a52,
Sup. Code, 1913.)

**BILLS AND NOTES:  ''Holder in Due Course''—Presumption—
Fraudulent Negotiation—Burden of Proof.**  The law proceeds on
the assumption that every holder of a negotiable instrument is,
*prima facie,* a ''holder in due course''  (Sec. 3060-a59, Sup. Code,
1913), but whenever it appears that the instrument was nego-
tiated ''in breach of faith or under such circumstances as amount
to a fraud''  (Sec. 3060-a55, Sup. Code, 1913), then the law pre-
sumes no longer, but calls upon the holder to prove that he is in
fact a ''holder in due course.''   (Sec. 3060-a52, Sup. Code, 1913.)

   PRINCIPLE APPLIED:  In instant case, the maker and payee
by written agreement cancelled the notes, the payee agreeing to
return the notes to the maker.  In violation of this agreement,
the payee negotiated the note.  The question of good faith and
notice was in the record.  The holder was content to show that
he had taken the notes of the payee and held the note in suit
as collateral.  The court directed a verdict for the holder.  Court
says:  ''It is too clear for argument that such testimony did not
conclusively meet the burden of proof laid upon him.''

**BILLS AND NOTES: Note Marked Paid—Presumption—Jury Question.** An entry on a note that it is cancelled and paid raises a presumption that such is the fact, and even though a farther entry is made thereon that such cancellation entry was an error, nevertheless, the real truth of the matter, under instant record, was for the jury, not for the court, the issue at this point being whether the collateral was discharged by the cancellation of the principal notes.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN, Judge.

WEDNESDAY, MARCH 17, 1915.

ACTION upon two promissory notes. The action is in the form of a claim filed against the estate of decedent, the notes being the basis of the claim. The plaintiff was not the payee of the notes but claims as a holder in due course. A defense was pleaded, good as against the payee. The trial court directed a verdict for the plaintiff on the ground that he was a holder in due course without notice of infirmity in either note. The defendant executrix appeals.—*Reversed.*

*Mac. J. Randall* and *Read & Read,* for appellee.

*Clinton L. Nourse,* for appellant.

EVANS, J.—The defendant is the executrix of the etsate of her husband, C. H. Philpott. On June 12, 1911, Philpott entered into a contract with the American-Canadian Land Company, a co-partnership, for the purchase of certain Texas lands, and executed his notes therefor to a total of about $7,000. October 25, 1911, this contract was cancelled by a written agreement and the land company agreed to return to Philpott his notes. The return was never made. Philpott died a year later. The claim herein is based upon two of said notes, one for $1,500 and the other for $1,000. The defense here indicated being good as to the payee of the notes, the ultimate question is whether upon this record it conclusively appears that the plaintiff was in good faith a holder in due

course, so as to require a directed verdict in his favor. This ultimate question depends upon two or three preliminary ones, viz.: (1) Was each note negotiable on its face? (2) Was the title of the person who negotiated the note to the plaintiff, defective? (3) Upon which party was the burden of proof as to the good or bad faith of the plaintiff?

I. First as to negotiability. The $1,500 note is conceded to be negotiable upon its face and due in three years after date. The defendant challenges the negotiability of the other note. It was drawn payable "on or before

**1. BILLS AND NOTES: demand note: unreasonable delay in negotiating: dishonor: jury question.** *four* —— after date." It does not appear therein whether it was to become payable in four *days,* four *months,* or four *years.* The defendant contends that, because of this defect, the time of maturity was rendered uncertain and the negotiability of the instrument was thereby destroyed. On the other hand, plaintiff contends that inasmuch as no time of payment was actually expressed, it became a note payable on demand, under Sec. 3060-a7. Adopting for the moment the plaintiff's contention at this point, and reading the note as payable on demand, another difficulty confronts him. Upon the negotiating of such a note an unreasonable length of time after its issue, the holder is not deemed a holder in due course. Sec. 3060-a53. In this case the date of issue was June 12, 1911, and that of negotiating, January 18, 1912. Under the authorities, a reasonable time for the negotiating of a demand note is rather brief. Its dishonor is not long delayed. In the following cases respectively, two days, seven days, and thirty days were held to be a reasonable time: *Field v. Nickerson,* 13 Mass. 131; *Thurston v. M'Kown,* 6 Mass. 428; *Ranger v. Cary,* 1 Metc. 369.

In the following cases respectively, two months and a half, three months and a half, and eight months have been held beyond a reasonable time and sufficient to dishonor a demand note: *Losee v. Dunkin,* 7 Johns. (N. Y.) 70; *Stevens*

*v. Bruce,* 21 Pick. 193; *Ayer v. Hutchins,* 4 Mass. 370; *Bank v. Jenness,* 2 Metc. 288.

There is, however, no definite rule to be applied, and among other elements ''the facts of the particular case'' are to be considered. 3060-a193. It is clear, therefore, that the defendant was entitled to go to the jury on this question if upon no other.

II. As to this particular note, there is a further consideration that militates against the plaintiff as a holder in due course. Sec. 3060-a52 is as follows:

2. BILLS AND NOTES : irregular ·on face : negotiability destroyed.

''A holder in due course is a holder who has taken the instrument under the following conditions:

''1. That the instrument is complete and regular upon its face.

''2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact.

''3. That he took it in good faith and for value.

''4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.''

This note was not ''complete and regular'' upon its face. It indicated upon its face that some word had been omitted in an attempted specification of the time of payment.

If it were made to appear that the real contract between the parties was that the note should be payable in four *months* or four *years,* the instrument was reformable in equity at the suit of either party. This would not destroy the validity of the note, but it would destroy its negotiability until such reformation was had. The manifest irregularity in this case is not one of the ''omissions'' specified in Sec. 3060-a6, which section is as follows:

"The validity and negotiable character of an instrument are not affected by the fact that:

"1. It is not dated; or

"2. Does not specify the value given, or that any value has been given therefor; or

"3. Does not specify the place where it is drawn or the place where it is payable; or

"4. Bears a seal; or

"5. Designates a particular kind of current money in which payment is to be made.

"But nothing in this section shall alter or repeal any statute requiring in certain cases the nature of the consideration to be stated in the instrument."

Sec. 3060-a14 provides for the filling of blanks by the holder of an instrument duly signed within the scope of the holder's authority as follows:

"Where the instrument is wanting in any material particular, the person in possession thereof has a prima-facie authority to complete it by filling up the blanks therein. And a signature on a blank paper delivered by the person making the signature in order that the paper may be converted into a negotiable instrument operates as a prima-facie authority to fill it up as such for any amount. In order, however, that any such instrument when completed may be enforced against any person who became a party thereto prior to its completion, it must be filled up strictly in accordance with the authority given and within a reasonable time. But if any such instrument, after completion, is negotiated to a holder in due course, it is valid and effectual for all purposes in his hands, and he may enforce it as if it had been filled up strictly in accordance with the authority given and within a reasonable time."

Such instrument is thereby rendered negotiable. But it becomes so *after* the blanks are filled and not before. If the

real intent of the parties in interest was to make this instrument payable in four years, it may be that the payee could have lawfully corrected the oversight by inserting the word "years"; and it may be also that this would have rendered the note negotiable to a holder in due course as defined in the section above quoted. The question in that form is not now before us and we need not pass upon it. We think it quite clear that this irregularity upon the face of the note prevented its taker from becoming a holder in due course. It could be deemed a demand note, unless the agreement of the parties was in fact otherwise. If otherwise, such fact was suggested by the incompleteness of the terms actually used.

The controlling fact at this point is, not that the blank was not filled, but that it *was filled imperfectly* or irregularly. Though we grant that the note was presumptively good as a demand note, yet it was not "complete and regular" within the requirements of Sec. 3060-a52, and therefore was not negotiable.

3. BILLS AND NOTES: "holder in due course" presumption: fraudulent negotiation: burden of proof.
III. As to the $1,500 note, the primary question is, Was the title of the payee defective when he negotiated the same to the plaintiff on January 18, 1912?

"The title of a person who negotiates an instrument is defective within the meaning of this act (Negotiable Instrument Act) when . . . or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud." Sec. 3060-a55.

In this case, the plaintiff took the note in question from the payee. The evidence was abundant to show that such negotiation was in breach of faith on the part of the payee.

Sec. 3060-a59 provides as follows: "Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove

that he or some person under whom he claims acquired the title as a holder in due course.''

The defendant, therefore, having introduced sufficient evidence to show that the title of the payee was defective when the negotiation was made, the burden was thereby cast upon the plaintiff to show, notwithstanding, that he was a holder in due course within the conditions specified in Sec. 3060-a52. We find in the record little, if any, attempt to prove these conditions affirmatively. The field of good faith was involved, with its possible ramifications. Likewise the field of notice. The plaintiff was called to the witness stand by the defendant and testified as follows:

"I am the claimant herein. In January, 1912, the American-Canadian Land Company made two notes to me: one for $2,000 and the other for $4,700, and for these two notes I claim to hold the notes Exhibits 'B' and 'C' as collateral. I now produce the two notes above referred to, the one for $2,000 is dated January 18, 1912, and marked by the reporter, Exhibit 'E' and the other for $4,700 of the same date, marked by the reporter, Exhibit 'F'.''

Exhibits "B" and "C," referred to in his testimony, were the notes in suit. The foregoing was his entire testimony as to the circumstances attending his acquisition of the notes. It is too clear for argument that such testimony did not conclusively meet the burden of proof laid upon him.

For previous cases see *Bank of Bushnell v. Buck Bros.,* 161 Iowa 362; *Iowa National Bank v. Carter,* 144 Iowa 715, 722; *Arnd v. Aylesworth,* 145 Iowa 185, 191; *McNight v. Parsons,* 136 Iowa 390, 399; *Bennett State Bank v. Schloesser,* 101 Iowa 571, 573; *Commercial Bank of Essex v. Paddick,* 90 Iowa 63, 66; *Frank v. Blake,* 58 Iowa 750; *City Bank v. Green,* 130 Iowa 384; *Citizens' Bank v. Houtchens,* 64 Wash. 275; *Johnson County Savings Bank v. Rapp,* 47 Wash. 30; *Bank v. Walker,* 82 Conn. 24; *New England Mortgage Sec. Co. v. Gay*

(C. C.) 33 Fed. 636, 649; *Shellenberger v. Nourse,* 20 Idaho 323; *Bluthentahl v. Columbia,* 175 Ala. 398; *Winter v. Nobs,* 19 Idaho 18; *Parsons v. Jackson,* 99 U. S. 434; *Ireland v. Scharpenberg,* 54 Wash. 558; *National Bank v. Kirby,* 108 Mass. 497; *Merchants' National Bank v. Wadsworth,* 166 Mich. 528; *Union National Bank v. Mailloux,* 27 S. D. 543; *Citizens' Sav. Bank v. Couse,* 68 Misc. Rep. 153; *Union National Bank v. Winsor,* 101 Minn. 470; *Park v. Winsor,* 115 Minn. 256; *Iowa National Bank v. Carter, supra.*

IV. It appeared in evidence that the plaintiff claimed to hold the notes in suit as collateral only for the security of two notes of the American-Canadian Land Company for $2,000 and

4. BILLS AND NOTES : note marked paid : presumption : jury question.

$4,700 respectively. These notes purported to have been executed January 18, 1912. Upon notice served by defendant, they were brought into court. They appeared upon their faces to have been paid and cancelled. The plaintiff testified that they were not in fact paid and that the cancellation was a mistake. An entry had been made upon the notes to that effect and the entry had been signed by members of the partnership. Manifestly, if such notes were paid, the plaintiff was no longer a holder in due course of the collateral. The appellant contends that upon the evidence here disclosed the question was for the jury as to whether such notes were paid and the collateral thus discharged. We see no escape from this contention. Surely the cancellation stamp upon the notes was *prima facie* sufficient to prove the discharge of the collateral. The truth and good faith of the explanation was preeminently a question of fact. It is urged by appellee that the pleadings made no issue at this point. It is true that no pleading of the defendant alleged the payment of the notes for which the collateral purported to be held. We do not think she was required to plead to such effect. The facts thus developed on the trial were peculiarly within the knowledge of the plaintiff and outside the knowledge of the defendant. The defendant's pleadings did challenge the plaintiff as not a

holder in due course and for that reason claimed the right to interpose her defense against the original payee. We think the pleading was sufficient to call in question the good faith of the plaintiff's claim as a holder in due course.

We reach the conclusion that the plaintiff was not entitled to a directed verdict and the order of the trial court is therefore—*Reversed.*

DEEMER, C. J., LADD and PRESTON and SALINGER, JJ., concur.

DEEMER, C. J. (Concurring).

While I agree to the result reached, I am not satisfied with that part of the opinion holding that the note in suit is nonnegotiable because of uncertainty as to the time of payment.

Code Sec. 3060-a7 provides that "an instrument is payable on demand:

"1. When it is expressed to be payable on demand, or at sight, or on presentation; or

"2. In which no time of payment is expressed."

The first paragraph does not apply to the note in suit, but the second does, as I understand it.

The majority say that there is an unfilled blank in the note, and suggest that it was intended to insert therein days, months or years. How do we know that, except from inference? Surely no time for payment is *expressed,* and the statute says in terms that, if not expressed, it is payable on demand. It does not say that it is not negotiable if it be inferred that it was the intention of the parties to fill the bill, but specifically provides that if no time is expressed it is payable on demand. It is suggested that the note might be re-formed in equity and the blank filled in such a suit. Any note is subject to be re-formed in equity, but that does not necessarily destroy its negotiability.

The statute quoted is but a codification of the law merchant, and courts have held under that law that a note in

which there is an unfilled blank as to the time of payment is payable on demand, and is negotiable. See Daniel on Neg. Inst., Sec. 88, wherein he says: "If the time of payment be left blank, as for instance, if the instrument be payable —— months after date," it is payable on demand. Citing: *McLean v. Nichlen,* 3 Vict. 107; *Stowe v. Merrill,* 77 Me. 550. See also, sustaining the same rule: *Hotel Lanier v. Johnson,* 30 S. E. 558 (Ga.); *Young v. Ellis,* 21 S. E. 480 (Va.); *McVeigh v. Howard,* 13 S. E. 31 (Va.); *O'Mohundro v. O'Mohundro,* 21 Gratt. 626.

If payable on demand, it was negotiable and complete and regular on its face, and not subject to reformation in the hands of an innocent purchaser for value. Even if the note be not fair and complete on its face, the only uncertainty is as to the time of payment. This uncertainty did not give notice of any other infirmity in the note or indicate that the consideration had failed or that it was negotiated in bad faith. The blank could have been filled in by any holder, and in any event it could be filled to express the true date as agreed upon by the parties or by action in equity.

That the defect was not notice of infirmities see the following cases: *Miller v. Crayton,* 3 N. Y. Sup. Ct. Rep. 360; *McSparran v. Neeley,* 91 Pa. 17, and cases cited.