M. R. HIGBY, Appellee, v. W. H. BAHRENFUSS et al.,
Appellants.

PLEADING: Amendments—When Properly Rejected. An amendment is properly rejected which is offered at the close of all the evidence and which, if allowed, would not be supported by the evidence.

BILLS AND NOTES: Holder in Due Course—Evidence. Evidence reviewed, and held to show that plaintiff was a holder in due course.

BILLS AND NOTES: Negotiability and Transfer—"Without Recourse"—Effect. Indorsements "without recourse" do not destroy or impair the negotiability of a negotiable instrument.

BILLS AND NOTES: Holder in Due Course—Past-Due Interest—Effect. Notice of dishonor of a negotiable instrument is not imparted to a purchaser by the fact that the interest thereon is past due.

*Appeal from Hamilton District Court.*—R. M. WRIGHT,
Judge.

WEDNESDAY, JUNE 20, 1917.

ACTION to recover interest on a promissory note. Defense, that the note was without consideration; that plaintiff, as indorsee, took it with notice of infirmaties. Judgment for the plaintiff in the court below.—*Affirmed.*

*Wesley Martin* and *D. C. Chase,* for appellants.

*McGrath & Archerd,* for appellee.

GAYNOR, C. J.—This action is brought to recover interest on a certain note for $1,500, given by the defendants to one William Greenwood, which appears to have been indorsed without recourse by Greenwood to one Bair, and by him to the plaintiff. The petition is in the usual form.

The answer admits the execution of the note; alleges
that the note is collateral to a certain mortgage of even
date therewith; that there was a contemporaneous written
agreement between Greenwood and these defendants, at the
time of the execution of the note and mortgage, that there
should be no personal liability on the note and mortgage,
and that the land covered by the mortgage should be the
full measure and limit of defendants' liability on the note;
that this agreement was either written in the mortgage
or attached to the mortgage, and was understood by all the
parties to be a part of the agreement covered by the note
and mortgage; that said note was without consideration;
that the consideration has wholly failed; that the note
was obtained by false and fraudulent representations; that
defendants were deceived, and received no value; that the
note was given as a part of the purchase price of certain
land in Dakota; that the land was not worth to exceed $500,
and was, at the time, mortgaged for $1,000.  The defend-
ants further say that the plaintiff is not a good-faith pur-
chaser of the note; that he had knowledge of the infirmi-
ties in the note, or notice thereof.  The defendants also
filed a cross-petition in equity, asking that the contract be
reformed so as to express the real agreement of the parties.
The cause was tried as an equity action.  The court entered
a decree dismissing defendants' cross-bill, and entering
judgment against the defendants for $286.10.  From this
judgment, defendants appeal.

After the evidence was all in, the de-

1. PLEADING:
amendments:
when properly
rejected.

fendants offered to file an amendment to
their cross-petition, setting up that the con-
tract sued on, or the mortgage given as a
part of the same contract, had been materially altered, in
that the agreement that the defendant should not be bound
personally for the note had been erased.  This was refused,
or, if filed, was stricken out on motion of the plaintiff, for

the reason that it was filed too late.    This is the first error relied upon for a reversal.

It appeared upon the trial that the clause limiting liability was not in the mortgage or attached thereto.    It is contended that the court, in furtherance of justice, should have allowed the amendment charging an alteration to have been made in the instrument, and that this should have been permitted to conform the pleading to the proof.    It is true that to allow amendments is the rule; to reject them, the exception.    It is also true that the law authorizes amendments to conform the pleadings to the proof.    It was discovered, upon the presentation of the mortgage, that this agreement was not in the mortgage or attached thereto. This must have been known to defendants at the time of filing the cross-petition.    It was because of this that the cross-petition asking reformation of the instrument was filed.    The only evidence that •this contract was ever in the mortgage is found in the following testimony: Bahrenfuss testifies to the effect that he told Greenwood that he must protect him in some way.    He says: "We agreed that we would put it on the land only.    I was not to be personally liable on the note."    He asked the scrivener to put it in, and relied on him to do so.    His statement that it was in, we think, has its foundation in the belief that the scrivener did as he agreed to do, or on what the scrivener told him.

The scrivener testified that he remembered that the defendant insisted on the mortgage's being drawn so that the land only should be liable for the debt; that there should be no personal liability; that the talk was in the presence of Greenwood; that that talk was the first time they came to his office; that he, as scrivener, was directed to insert that clause in the mortgage.    He testified:

"I would say that I put it in the mortgage if I hadn't seen the mortgage.    If I had been asked if I put it in be-

fore the mortgage was presented to me, I would say that I did."

The scrivener examined the mortgage, however, and found no evidence of any erasure. Mrs. Bahrenfuss testified:

"The mortgage was to fall back on the land in Dakota. That was the conversation. Mr. Tucker wrote it in the mortgage with pen and ink. It was read over. I heard this part read, that only the land should be holden on the note. The mortgage was to be on the Dakota land only." She further testified: "I was with my husband and Mr. Greenwood when they went to tell Mr. Tucker, the scrivener, how to draw the mortgage. They were drawn and ready for signature when I came to sign. I didn't read them. What he wrote in there was that the mortgage was to be. on the Dakota property only. That is the statement that was to have been put in there. That was what we talked about in the office. The mortgage was to be upon the Dakota property only."

She also says that she saw the clause in controversy in the instrument, but this, we think, cannot be true in the light of all she testifies to.

On the question of alteration or erasure, a chemist was called, who said he was acquainted with the action of chemicals; that there is a chemical that will remove the evidence of ink writing; that he had removed ink by the use of this chemical; that the mortgage bears no evidence of an alteration or erasure. The evidence may tend to show that there was an agreement to have this incorporated in the mortgage, but the evidence is not clear and satisfactory, as the rule requires. There is no evidence that anything had been erased. It was not found in the mortgage, and no trace of its ever having been there was discovered by anyone. The amendment offered, the rejection of which is complained of, did not, however, go to the fact that this agreement

should have been in the mortgage, and that the writing ought to be reformed so as to show that fact. That issue was tendered in the original cross-petition. This amendment was intended to present the issue that the mortgage, at the time of its execution, contained the clause, but it had been wrongfully erased; that it had been altered by having this clause removed after the execution of the instrument. This pleading would not conform to the proof, nor, if it had been admitted, would the proof sustain it. We think there was no error in refusing to accept this amendment, or in striking it from the files, if filed.

**2. BILLS AND NOTES: holder in due course: evidence.** The second error complained of is that the court erred in holding the plaintiff to be a good-faith purchaser. What constitutes a good-faith purchaser—a holder in due course—is defined by the uniform Negotiable Instruments Law, found in Section 3060-a52, Code Supplement, 1913:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"1. That the instrument is complete and regular upon its face.

"2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact.

"3. That he took it in good faith and for value.

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Section 3060-a56 provides:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such

facts that his action in taking the instrument amounted to bad faith."

Section 3060-a26 provides:

"Where value has at any time been given for the instrument, the holder is deemed a holder for value in respect to all parties who became such prior to that time."

Section 3060-a25 provides:

"Value is any consideration sufficient to support a simple contract."

Applying the above statutes to the facts disclosed in this case, it is apparent that the defendants are not entitled to be relieved from the obligation expressed in their note. The plaintiff testified that he deeded some land in Wisconsin; that, before taking the note, he inquired as to the solvency of Mr. Bahrenfuss, and got reports that he was perfectly good for the note; that, at the time he took the note, he did not know that the defendants were making any claim that they were not individually liable upon the note; that he notified Mr. Bahrenfuss that the interest was due, and received no answer. In fact, Bair was not a witness on the trial.

Section 3060-a24 provides:

"Every negotiable instrument is deemed *prima facie* to have been issued for a valuable consideration, and every person whose signature appears thereon to have become a party thereto for value."

3. BILLS AND
NOTES: nego-
tiability and
transfer:
"without re-
course:"
effect.
The defendants have signally failed to bring home to the plaintiff a knowledge of any defects in or defenses to the instrument in question. The mere fact that it was indorsed without recourse does not impair the negotiable character of the instrument. See Section 3060-a38.

In *Kelley v. Whitney*, 45 Wis. 110, 117, the court said:

"The note * * * was indorsed by the payee

\* \* \* 'without recourse.' But that 'is not sufficient to charge the assignee with notice of a defense against the note on the part of the maker, nor is it sufficient to put him on inquiry in reference thereto.' *Stevenson v. O'Neal,* 71 Ill. 314."

Section 3060-a57 provides:

"A holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon."

Assuming, as we do, the correctness of the rule laid down in *City Nat. Bank v. Jordan,* 139 Iowa 499, *Iowa Nat. Bank v. Carter,* 144 Iowa 715, *Arnd v. Aylesworth,* 145 Iowa 185, and *Stotts v. Fairfield,* 163 Iowa 726, 738, that the holder of a note having its inception in fraud has the burden of proving that he is a good-faith holder in due course, yet the record in this case discloses affirmatively that the instrument is complete and regular on its face; that it was negotiated before it was overdue; that there was never any agreement that the provision limiting its liability should be incorporated in the *note;* that the plaintiff is a good-faith purchaser for value; that, at the time it was negotiated to him, he had no notice of any infirmity in the instrument, or defect in the title of the person negotiating it; had no knowledge of any facts to put him on inquiry, or that would suggest that the taking of the note was in bad faith. Defendants' second contention must be overruled.

4. BILLS AND NOTES: holder in due course: past-due interest: effect.

The only suggestion of dishonor in the note is that the interest was past due at the time the note was negotiated to this plaintiff. In *Kelley v. Whitney,* 45 Wis. 110, the rule was laid down that a promissory note matures only when it becomes due by its terms, and that one who purchased it in good faith, for value, before it matures, is

within the protection of the law merchant, although interest is overdue at the time of such purchase.

In this case, the authorities are collated pro and con, and the doctrine held to as above stated.

In *National Bank of N. A. of B. v. Kirby,* 108 Mass. 497, the court used this language:

"If, as it is argued, it be true that the failure to pay interest ever as a matter of law amounts to a dishonor of a note, it can only affect one who has knowledge of the fact. Payment of interest is not always indorsed, and other evidence is often relied on to prove it. Want of indorsement does not always apprise the party, to whom such note is transferred, that there has been no payment. * * * The fact that overdue interest is not indorsed might have slight interest in putting the purchaser on his inquiry. * * * But in its effect upon the credit of a note, it is manifest that a failure to pay interest is not to be ranked with failure to pay principal. Interest is an incident of the debt, and differs from it in many respects. It is not subject to protest and notice to indorsers, or days of grace according to the law merchant. Interest is not recovered on overdue interest; and the statute of limitations does not run against it until the principal is due. The holder of a note with interest payable annually loses no rights against the parties to it, whether makers or indorsers, by neglecting to demand it; and he has the election to do so, or wait and collect it all with the principal. * * * We are referred to no case in which it has been held that failure to pay interest, standing alone, is to be regarded sufficient in law to throw such discredit upon the principal security upon which it is due, as to subject the holder, to the full extent of the security, to antecedent equities. * * * While nonpayment of interest is not to be allowed the effect here claimed for it, it is still a fact proper to be considered by the jury, in connection with other circumstances,

on the question whether the holder is entitled to the position of one who has taken in good faith and without actual or constructive notice of existing defences."

In the case of *McPherrin v. Tittle,* (Okla.) 129 Pac. 721, 723, the court said:

"Is the fact that interest is overdue and unpaid, of itself, sufficient to affect the purchaser of a negotiable note with notice that the instrument is dishonored? There are decisions so holding (citing authorities). * * * The better rule, and the one supported by the text writers and the weight of authority, is that a note is not overdue by reason of a failure to pay interest prior to the maturity of the principal, in the absence of a stipulation to that effect, because the interest is a mere incident to the debt" (citing authorities).

This case holds to the doctrine announced in *National Bank v. Kirby,* supra. See also, as bearing upon this question, *Morgan v. United States,* 113 U. S. 476 (28 L. Ed. 1044); *Indiana & Illinois Cent. R. Co. v. Sprague,* 103 U. S. 756 (26 L. Ed. 554); *Cromwell v. County of Sac,* 96 U. S. 51 (24 L. Ed. 681). The *McPherrin* case, supra, holds to the doctrine that the presence of such unpaid coupons is considered a material circumstance, bearing on the question whether the purchaser acquired them in good faith and without notice, and is a fact to be considered by the jury upon that issue; but the mere fact that negotiable bonds, not due upon their face, have attached to them coupons past·due and unpaid, does not show dishonor upon the face of the bond. See also, *McLane v. Placerville & S. V. R. Co.,* 66 Cal. 606 (6 Pac. 748); *Cooper v. Hocking Valley Nat. Bank,* 21 Ind. App. 358 (50 N. E. 775, 69 Am. St. Rep. 365).

The third and fourth assignments of error are involved in the questions hereinbefore discussed.

The result of this litigation may be unfortunate for the

defendants, but we see no escape for them in the record before us.  The judgment is, therefore,—*Affirmed.*

LADD, EVANS and SALINGER, JJ., concur.