KREITZ *v.* THE SAVINGS DEPOSIT BANK & TRUST CO.

*Negotiable instruments—Maturity unaffected by nonpayment of past-due interest—Purchasers are holders in due course, when—Nonpayment of overdue interest not notice of dishonor to assignee—Subsequent loans by holder as collateral and maker's rights unaffected—Status as bona fide holder not affected by making additional loans.*

1. Nonpayment of past-due interest on negotiable instrument does not affect its maturity, and purchasers thereof in good faith for value are holders in due course.

2. That overdue interest on note assigned as collateral security was not paid *held* not notice of dishonor to assignee as affecting subsequent loans and right of maker to assert defenses available against payee.

3. That overdue interest on note assigned as collateral was not paid at time of making additional loans thereon *held* insufficient to show want of good faith of assignee, affecting his status as holder in due course.

(Decided June 24, 1926.)

ERROR:   Court of Appeals for Cuyahoga county.

*Mr. Melville . W. Vickery,* for plaintiff in error.
*Messrs. Kelley, David & Cottrell,* and *Mr. Robert H. Rice,* for defendant in error.

MIDDLETON, J.   This action was instituted by the defendant in error, the Savings Deposit Bank & Trust Company, of Elyria, Ohio, against Phillip C. Kreitz, the plaintiff in error, for personal judgment on a certain promissory note and for the foreclosure of a real estate mortgage given to secure the payment of the note.   The note in question was given by Kreitz, in the sum of $22,000, and was made payable to the order of Louis M. and Marguerite Greif.   It was dated on the 15th day of November, 1918, and was made payable at the rate of $4,000 per year, beginning November 15, 1920, with interest at the rate of 5 per cent. payable annually.   It appears that on October 2, 1919, Greif pledged the note and mortgage to the bank as collateral security for a loan of $5,000, without the knowledge of Kreitz.   Thereafter in February, 1920, another loan of $5,000 was made to Greif by the bank, for the payment of which the note and mortgage were again pledged as collateral. Other loans were made in March, 1920, and some were made in 1921, all under the same conditions and provisions.   It further appears that Kreitz had no knowledge of the pledging of this note as collateral until the 28th day of July, 1921.

He claims that on November 15, 1919, he paid the interest then due on said note, amounting to the sum of $1,320, and again on the 19th day of

November, 1920, paid a like amount of interest, and that in the meantime he paid $445 to be applied on the principal of said note, all of said foregoing payments being made to Greif and retained by him and not reported to the bank.

It is the contention of Kreitz with respect to the bank's rights that after the first installment of interest became due, to wit, on November 15, 1919, the bank then and thereafter having no knowledge of his payment thereof to Greif, the note became dishonored and all subsequent loans made by it were therefore made with notice of such dishonor, and that the rights of the bank in respect to these subsequent loans are subject to his equities growing out of his payments to Greif. This contention presents the single question whether nonpayment of an installment of interest on a negotiable instrument, which by its terms makes such interest payable at regular intervals, dishonors the instrument and renders it overdue.

While the courts are not in entire accord on this question, the weight of authority and the unquestioned tendency of modern decisions support the view that a mere failure to pay interest does not dishonor the note. On the other hand, very respectable authority may be found to the effect that under these conditions the note becomes dishonored and an indorsee takes it subject to the equities that may exist between the former holder and maker. One of the cases in the latter class most frequently referred to is *First Nat. Bank of St. Paul* v. *County Comm'rs. of Scott County,* 14 Minn., 77, 100 Am. Dec., 194. That case involved the nonpayment of vouchers attached to county

bonds, and the court held that such overdue vouchers dishonored the principal debt. The notes, however, to that decision, in 100 Am. Dec., 194, clearly indicate that the court's conclusion at that time was not in harmony with the current of authority. Later, in the same jurisdiction, is the case of *First Nat. Bank* v. *Forsyth,* 67 Minn., 257, 69 N. W., 909, 64 Am. St. Rep., 415. The opinion in the later case refers to the conflict of authority, and is not by any means an unreserved approval of the rule in *First Nat. Bank of St. Paul* v. *Commissioners, supra.* The opinion concludes with the observation that *First Nat. Bank* v. *Commissioners* should be followed upon the ground of *stare decisis,* if for no other reason. Another case holding to the same rule is that of *Hart* v. *Stickney,* 41 Wis., 630, 22 Am. Rep., 728.

It is there held: "A promissory note, bearing interest payable annually, was indorsed before maturity, but after an installment of interest was due and unpaid. Held, that the note was dishonored and that the indorsee took it subject to all equities between the original parties."

But the rule in this case was expressly repudiated by the same court in the later case of *Kelley* v. *Whitney,* 45 Wis., 110, 30 Am. Rep., 697. In the latter case it is held: "One who in good faith and for value purchases a promissory note before the principal is due, is within the protection of the law merchant, although interest is overdue and unpaid at the time of the purchase, and the note is indorsed by the payee without recourse, and there it appears to be 'secured by real estate mortgage.' "

As before observed, however, the later decisions are more unanimous to the effect that past-due interest on a negotiable instrument does not affect its maturity, and that purchasers thereof in good faith for value are holders in due course.

In *Higby* v. *Bahrenfuss*, 180 Iowa, 316, 163 N. W., 247, it is held: "That interest on a note was overdue does not constitute notice of dishonor to an indorsee."

In *McPherrin* v. *Title*, 36 Okl., 510, 129 P., 721, 44 L. R. A., (N. S.), 395, the same rule is followed. In the notes to the decision in 44 L. R. A., (N. S.), 395, many authorities are cited in support of the text.

Another case is *Winter* v. *Nobs,* 19 Idaho, 18, 112 P., 525, also reported in Ann. Cas., 1912C, 302. The notes to this decision in Ann. Cas., 1912C, 302, refer to many authorities in support of the text, and are prefaced with the statement:

"While the decisions have not been uniform, the rule supported by the weight of authority is that a mere failure to pay a periodical installment of interest due on a negotiable instrument will not amount to a dishonor of the instrument, and will not render it overdue."

Some authorities hold that when the fact of overdue interest is shown on the face of the instrument such fact is a circumstance to be considered in determining the good faith of the purchaser. If we should apply that rule to the instant case it would not support a claim of bad faith on the part of the bank. It is clear from the evidence that the bank took the note in question originally when it was not overdue, either as to

principal or interest. It was taken in good faith and for value. When the subsequent loans were made to Greif there was overdue interest, but there is nothing shown in the record in connection with that fact which could require any inquiry from the bank in respect to the payment of the interest, nor is the absence of such inquiry, under all the circumstances as they appear, any evidence of bad faith on its part. In *Gray* v. *Boyle,* 55 Wash., 578, 580, 104 P., 828, 829 (133 Am. St. Rep., 1042), the court quotes from Crawford's Annotated Negotiable Instruments Law as follows:

"The holder is not bound at his peril to be on the alert for circumstances which might possibly excite the suspicion of wary vigilance; he does not owe to the party who puts the paper afloat the duty of active inquiry in order to avert the imputation of bad faith. The rights of the holder are to be determined by the simple test of honesty and good faith, and not by a speculative issue as to his diligence or negligence. The holder's right cannot be defeated without proof of actual notice of the defect in title or bad faith on his part evidenced by circumstances. Though he may have been negligent in taking the paper, and omitted precautions which a prudent man would have taken, nevertheless, unless he acted *mala fide,* his title, according to settled doctrines, will prevail."

The record shows, page 90, that the trial court found that the bank "became the holder in due course of this note as collateral on October 2, 1919, and that it was assigned, indorsed to them, on March 8, 1920, for value, before due, and that they are the owners and holders in due course."

In view of all the facts in evidence we cannot say that such holding was manifestly wrong, and the judgment of that court must be and is affirmed.

This conclusion makes it unnecessary to consider the claim of an estoppel made by the bank, which it contends grew out of the making of the so-called interest contract or agreement on February 7, 1923, and from the circumstances and correspondence surrounding and following that agreement.

*Judgment affirmed.*

MAUCK, P. J., and SAYRE, J., concur.

Judges of the Fourth Appellate District sitting in place of Judges LEVINE, SULLIVAN and VICKERY, of the Eighth Appellate District.